## Kirkwood Brothers v. City of Madisonville et al.

(Decided June 18, 1929.)

FOX & GORDON and J. W. POWELL for appellants.

B. L. NISBET, J. A. JONSON and CHAS. G. FRANKLIN for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE McCANDLESS—Reversing.

On July 3, 1928, O. L. and Cleo D. Kirkwood, doing business as Kirkwood Bros., filed an application with the city council of the city of Madisonville for a permit to erect and maintain a gasoline station on a corner lot at the intersection of Noel and North Main streets in the city of Madisonville. The permit was refused, and on July 5th the parties brought this action against the city officers for a mandamus, requiring them to issue such permit. At the time of the application the following zoning ordinance was in effect in that city.

"Sec. 2. That no permit shall be issued for, and it shall be unlawful for any person, firm or corporation to erect, maintain or operate any public garage or public gasoline station for the disposal of gasoline, benzine, kerosene or motor fuel or other explosive or inflammable substances within 150 feet of the property line of any church or school within the city of Madisonville, except at such places within 150 feet of the property line of any church or school as may at the time of the passage of the ordinance be used as such."

The site for the proposed service station is not within 150 feet of any church or schoolhouse, and after this suit was filed the city council by an ordinance approved August 10, 1928, repealed the former zoning ordinance and enacted in lieu thereof sections 1 and 2 as follows:

"First: The city of Madisonville, Kentucky, is hereby divided into two zones, to be known as the business zone and the residence zone. The residence zone shall include each and every block within said

city which is bounded by principal streets of said city or by such streets and any railway right of way, where such right of way divides a block; and in which block seventy-five per cent. or more of the lots therein are now used for residence property. The business zone shall include each and every like block in said city in which seventy-five per cent. or more of the lots therein are now used for business property. Any block within said city not falling into the definitions above given as to residence property and business property, shall be considered as not divided into zones hereby.

"Second: . . . That no permit shall be issued for, and it shall be unlawful for any person, firm or corporation, to erect, maintain or operate any public garage or public gasoline station, store or disposal place or plant of gasoline, benzine, kerosene, motor fuel or other explosive or inflammable substance within one hundred and fifty feet of any church or school anywhere within said city, or within one hundred and fifty feet of any residence in any zone of residence property within said city, except at such places within said city within one hundred and fifty feet of any church, school or residence, where at the time of the passage of this ordinance, such garage or gasoline station, store, disposal place, or plant already exists."

By an answer filed after August 10, 1928, the city officials asserted that the block in question was located in a residence block and within 150 feet of certain residences therein, and relied on the latter ordinance as a defense. It was stipulated of record: That the block of which the proposed site is a part is bounded on the east by North Main street, on the west by the railroad right of way, on the north by Noel street, and on the south by Arch street. That there are located thereon 12 residences and one church building facing North Main street. There are also five vacant lots facing this street. The only property used for business purposes in the block is a small service garage facing Arch street and adjoining the railroad right of way. That the site for the proposed garage is within less than 150 feet of one residence located on this block and within less than that distance of several residences located in blocks on the opposite side of the street. It is further shown by witnesses who own two vacant lots in the block that it is their intention to

use those lots for residence purposes, and that this entire block is in the residential part of the city. The chancellor refused the mandamus and plaintiff appeals.

It is claimed by appellants: That under the charter of cities of the fourth class the city was not empowered to pass the zoning ordinance in question, or to control the location of gasoline or oil stations. (2) That an ordinance enacted after the permit was refused and the mandamus suit filed is no defense to the mandamus proceedings, and that Cayce v. City of Hopkinsville, 217 Ky. 135, 289 S. W. 223, holding otherwise should be overruled. (3) The ordinance of August 10, 1928, is arbitrary, unreasonable and indefinite. (4) The lot in question is not located within a "residence zone" as defined by the ordinance.

Admittedly the ordinances in question are the only ones regulating the location of filling stations. And it may be assumed that the ordinance of August 10 is valid in every respect; yet if the proposed site is not within a residence zone, as defined in the ordinance, plaintiff may have relief and the fourth proposition, supra, be the only one necessary to be discussed.

It will be observed that a block is in a "residence zone" when 75% or more of the lots therein are *now* used for residence purposes. And is in a "business zone" when 75% or more of the lots therein are *now* used for business property. Blocks not falling within either definition are not to be regarded as in either zone. There are 19 lots in the block, 12 of which are now used for residence lots, one as a church lot, one as a business lot, and five are vacant. Treating the church lot as residence property, 13 out of 19 are *now* used for residence purposes, one for business purposes, and the five vacant lots are not being used for any purpose; hence it cannot be said that 75 per cent. of the lots in this block are *now* used for residence purposes. True, the owners of two of the vacant lots testify that they are holding their lots for such purposes. But the language of the statute is *"now used,"* and this language is not satisfied by a mere intention of the owner to so use the property in the future. In construing a much more liberal ordinance, which read, "now used or designed for business or industrial purposes," we said:

"It is suggested by appellant that the owner of the property is the one who knows for what purpose

the property is 'designed.' We believe the learned counsel misconstrues the meaning of the word 'designed' as used in that ordinance. It means something more than what the owner has in his mind. There must have been some overt act, or some setting apart of the land for a business or industrial purpose, before it can be said that it has been designed for that purpose.'' Fowler v. Obier, City Building Inspector, 224 Ky. 760, 7 S. W. (2d) 226. It follows that the block in question has not been zoned.

It is argued, however, that the proposed site of the filling station is within less than 150 feet of two or three residences located in residence blocks on the opposite side of the street, and that as the ordinance prohibits the erection of such station ''within 150 feet of any residence in any zone of residence property.'' it applies to this situation. We may assume this to be a proper construction of the ordinance, and also assume that it is valid in this respect. But the argument must fail, because there is neither pleading nor proof that the lots on the opposite side of the street are in residence blocks as defined by the ordinance. It follows that the erection of the station is not prohibited by the ordinance relied upon, and, inasmuch as a gasoline station is not in itself a nuisance, but on the contrary is a lawful and necessary business, and no other reason for rejecting the permit being shown, it should have been granted by the council, and the court erred in not requiring such action on its part. See Slaughter v. Post, 214 Ky. 175, 282 S. W. 1091; Indian Refining Co. v. Berry, 226 Ky. 123, 10 S. W. (2d) 630.

The judgment is therefore reversed, with instruction to the chancellor to grant the mandamus as prayed.