## McCown v. Gose et al.

(Decided June 7, 1932.)

W. L. KASH for appellant.

O. H. POLLARD for appellees.

OPINION OF THE COURT BY CREAL, COMMISSIONER—
Reversing.

This appeal is from a judgment of the Breathitt circuit court enjoining S. C. McCown, defendant below, from constructing and maintaining a filling station upon a lot which he owns in Jackson, Ky., a city of the fourth class. The lot in question is in a block formed by Main, Jail, College, and Jefferson streets, and extends the full width of the block about midway between Jail and Jefferson streets. That portion of Main street along and near this block is a portion of United States Highway No. 15, known as the Appalachian Highway, extending from Chicago to Charleston, S. C. For something over one-third of the distance in front of this lot it is 19 feet in width from curb to curb, and for the remainder of the distance is 37 feet in width.

Undisputed facts show that the city council granted to appellant a permit to erect a stone or brick garage upon his lot, and, while it was not so specified, it seems to have been the understanding that this permit included the right to erect and maintain a filling station in connection with the garage. According to plans of appellant, the garage building will be about 20 feet from Main street with the filling station in the intervening space.

In their petition seeking injunctive relief, appellee, C. C. Gose and a number of other citizens and property owners, plaintiffs below, allege that appellant has not obtained the written consent of two-thirds or of any of the owners of the property located in the block to erect a filling station upon his lot, and that the erection thereof without such consent will be in direct violation of chapter 100, Acts of the General Assembly of Ky. 1930 (Ky. Statutes, sec. 2741r, Baldwin's 1931 Supplement).

As further grounds for the relief sought, it is alleged that the erection of the garage and filling station

will necessarily obstruct and hinder traffic, and thereby become a menace and danger to the safety and lives of pedestrians and motorists and of property owners and residents whose property and homes are located on the block, and who have to pass appellant's lot in going to and from the post office, courthouse, and the business section of the city; that it will cause such continual congestion of traffic as will create and become a public nuisance. So much of the petition as sought to enjoin the erection of the garage was dismissed.

It is not revealed in the record nor in brief filed by counsel whether the lower court's judgment was based on the statute invoked by appellees or upon the general allegations and proof as to the conditions that would be created by the erection and maintenance of the filling station. However, we assume that the statute in question had a controlling effect in determining the court's judgment, since, in our opinion, the general allegations of the petition are not supported by sufficient or any evidence to warrant or support the judgment. Inferentially, we gather from brief for appellees that the decision of the lower court turned on the question of validity of the act since the brief is prefaced with the statement that "the sole question presented by the appeal is the validity of an act passed at the session 1930 of the Legislature, chapter 100, p. 359, Acts 1930." So much of that act (Ky. Stats., Supp. 1931, sec. 2741r) as is pertinent here reads:

"That it shall be unlawful for any person, firm or corporation to erect a filling station in any city of the third, fourth or fifth class, in a block in which the majority of the property is held and occupied as residence property, without first obtaining the written consent of the owners of two-thirds of property in such block. The word 'block' as used herein shall be construed to include both sides of any street between intersecting streets. . . ."

Coming directly to a discussion of the validity of the act, which is the sole question to be determined, it may be said at the outset that, if it is to be sustained, it must be under that inherent power of the state known and recognized in our system of jurisprudence and government as the "police power," since it cannot look elsewhere for justification. As had been pointed out by this

court, "it is much easier to perceive and realize the existence and sources of this power than to mark its boundaries, or prescribe limits to its exercise." Commonwealth v. Payne Medicine Co., 138 Ky. 164, 127 S. W. 760, 761. And, while "no jurist has dared to state the limit in law of that quality in government which is exercised through what is termed the 'police power,' Berea College v. Commonwealth, 123 Ky. 209, 94 S. W. 623, 624, 29 Ky. Law Rep. 284, 124 Am. St. Rep. 344, 13 Ann. Cas. 337; Id., 211 U. S. 45, 29 S. Ct. 33, 53 L. Ed. 81, broadly speaking, it embodies the right of protection and preservation of government and society, and may be invoked for the regulation or even the prohibition of such business enterprises as may endanger the life, health, safety, or morals of the community, but, even in attempting to effect those ends, it cannot reach beyond the bounds of urgent public necessity.

While in the exercise of the police power the Legislature is given a wide field and many subjects with which it may deal, yet the people of the state in adopting a Constitution fixed certain limitations upon that body, and in the first 26 sections thereof, known as the Bill of Rights, set out certain essential and fundamental principles of free government which shall remain inviolate and which may not be abridged.

In the second section, it is declared that "absolute and arbitrary power over the lives, liberty and property of freemen exists nowhere in a republic, not even in the largest majority," and the twenty-sixth section provides that "to guard against transgression of the high powers which we have delegated, we declare that everything in this Bill of Rights is excepted out of the general powers of government, and shall forever remain inviolate; and all laws contrary thereto, or contrary to this Constitution, shall be void."

In determining whether by this act the Legislature has gone beyond bounds fixed by the Constitution, we are not without precedent in this and other jurisdictions. In the case of City of Monticello v. Bates, 169 Ky. 258, 183 S. W. 555, 558, the court, in holding to be invalid an ordinance providing that no persons shall erect a building in a town without permission of the Board of Trustees thereof, said:

"The rule is well established that municipal ordinances, placing restrictions upon lawful conduct

or the lawful use of property, must, in order to be valid, specify the rules and conditions to be observed in such conduct or business; and must admit of the exercise of the privilege of all citizens alike who will comply with such rules and conditions; and must not admit of the exercise, or of an opportunity for the exercise, of any arbitrary discrimination by the municipal authorities between citizens who will so comply.''

And in the case of Commonwealth v. House, 177 Ky. 829, 198 S. W. 218, the court, in discussing a similar ordinance, said:

''It gives no effect to the character of the building, and prescribes no standard with which the citizens must comply, or by which the discretion of a council is to be controlled. On the contrary, it gives to the council the arbitrary power to discriminate between the citizens of the city, by granting a permit to one and refusing a permit to another, although the circumstances and conditions may be exactly the same.''

In the case of Slaughter v. Post et al., 214 Ky. 175, 282 S. W. 1091, 1092, the court, in considering an ordinance of the city of Paducah providing that a gasoline filling station should not be erected within a residential district nor within a certain distance of a public school and that a permit must be secured to erect and operate such filling station within the city, further declared that, if it should appear to the mayor and general council that the establishment of any filling station proposed to be established should be against the public health, public morals, or interests of the city, the permit should be refused. The ordinance was held to be void, and in the course of the opinion it was said:

''Under the Constitution, arbitrary power cannot be conferred upon the city council in the exercise of the police power or any other power it possesses. A gasoline filling station, properly constructed and properly operated, is not per se a nuisance. The city council may by reasonable ordinances establish zoning districts or define how gas filling stations may be constructed and how operated. But arbitrary power to allow a gas filling station on one

man's property and disallow it to another, without any definite rule by which the city council is to be governed, cannot be conferred, for this would be to give it power to deny equal rights to all citizens."

In the case of Tilford v. Belknap, 126 Ky. 244, 103 S. W. 289, 290, 31 Ky. Law Rep. 662, 11 L. R. A. (N. S.) 708, the court had for consideration an ordinance of the city of Louisville, providing that no frame dwelling should be erected within the city until the owners, architect, or agent had obtained permission in writing from all persons owning brick or stone structures within 60 feet of the proposed building, and, in holding the ordinance to be unconstitutional and void as a delegation of governmental powers to private citizens said:

"The ordinance involved . . . is both unreasonable and discriminatory, for it attempts to confer upon a private citizen . . . power of the most arbitrary character over the property of his neighbors within a radius of 60 feet of his own house.

. . .

"The ordinance is intended to confer, and actually does confer, not a discretion to be exercised upon a consideration of the circumstances of each case, but a naked and mandatory power to give or withhold consent at the mere whim or according to the caprice of the custodian of the power . . . which acknowledges neither guidance nor restraint and the exercise of which might in every instance result in oppression and unjust discrimination. . . . For these reasons, we do not hesitate to condemn the ordinance as unconstitutional and void."

That case involves all essential elements of the case at bar and cannot be distinguished.

Every individual acquires property subject to the right of the state to prescribe reasonable regulation and control in the use thereof for the public good, but all such regulations must be reasonable, general, and uniform, and the power must be exercised by the legislative body directly, and cannot be delegated to the mere whim or caprice of one or more individuals; and any exercise of the police power should operate uniformly upon all persons similarly situated and who are thereby affected. The ordinance in question does not place an absolute restriction upon the use of property within residential blocks.

with respect to erection and operation of gasoline filling stations, but undertakes merely to confer upon three-fourths of the property owners the authority to say who shall have and exercise that privilege. It is therefore arbitrary, unreasonable, without uniformity, and is an attempted delegation to property owners of a power which in any event could only be exercised by duly constituted legislative bodies.

Passing to other jurisdictions, we find in the case of Eubank v. Richmond, 226 U. S. 137, 33 S. Ct. 76, 57 L. Ed. 156, 42 L. R. A. (N. S.) 1123, Ann. Cas. 1914B, 192, the court had for consideration an ordinance in part reading:

"That whenever the owners of two-thirds of property abutting on any street shall, in writing, request the committee on streets to establish a building line on the side of the square on which their property fronts, the said committee shall establish such line so that the same shall not be less than 5 feet nor more than 30 feet from the street line. . . ."

And in declaring the ordinance void and violative of the Federal Constitution said:

". . . It leaves no discretion in the committee on streets as to whether the street line shall or shall not be established in a given case. The action of the committee is determined by two-thirds of the property owners. In other words, part of the property owners fronting on the block determine the extent of use that other owners shall make of their lots and against the restriction they are impotent. This we emphasize. One set of owners determines not only the extent of use, but the kind of use which another set of owners may make of their property. . . . The statute and ordinance, while conferring the power on some property holders to virtually control and dispose of the property rights of others, creates no standard by which the power thus given is to be exercised; in other words, the property holders who desire and have the authority to establish the line may do so solely for their own interest, or even capriciously. Taste (for even so arbitrary a thing as taste may control) or judgment may vary in localities, indeed in the same locality. There may be one taste or judgment of comfort or convenience

on one side of a street and a different one on the other. There may be diversity in other blocks; and, viewing them in succession, their building lines may be continuous or staggering . . . as the interests of certain of the property owners may prompt against the interests of others. . . . This, . . . we think, an unreasonable exercise of the police power.''

But in the later case of Cusack Co. v. Chicago, 242 U. S. 526, 37 S. Ct. 190, 61 L. Ed. 472, L. R. A. 1918A, 136, Ann. Cas. 1917C, 594, the court upheld an ordinance prohibiting the erection of billboards in any block in which one-half of the buildings on both sides of the street were used exclusively for residential purposes without first obtaining the written consent of a majority of the owners of frontage on both sides of the street. However, it was pointed out that in that case the evidence introduced tended to establish that such billboards were offensive, unsanitary, a shield for immoral practices, and for loiterers and criminals, and thereby proper subjects for the exercise of the police power for the purpose of the general welfare, public safety, and morals.

However, the latest case we find from the Supreme Court, dealing with ordinances similar to that under consideration, is that of State of Washington ex rel. v. Roberge, 278 U. S. 116, 49 S. Ct. 50, 73 L. Ed. 210, in which the court held to be violative of the Federal Constitution an ordinance which reads:

''Philanthropic home for children or for old people shall be permitted in first residence district when the written consent shall have•been obtained of the owners of two-thrids of the property within four hundred (400) feet of the proposed building.''

In the course of the opinion it was said:

''The section purports to give to the owners of less than one-half the land within 400 feet of the proposed building authority—uncontrolled by any standard or rule prescribed by legislative action— to prevent the trustee from using its land for the proposed home. The superintendent is bound by the decision or inaction of such owners. There is no provision for review under the ordinance; their failure to give consent is final. They are not bound by any official duty, but are free to withhold consent for

selfish reasons or arbitrarily and may subject the trustee to their will or caprice. [Citing case.] The delegation of power so attempted is repugnant to the due process clause of the Fourteenth Amendment. [Citing cases.]''

And further on in the opinion the court pointed out the distinction between that and the case of Cusack Co. v. Chicago, supra.

It has been consistently held by this court that a gasoline filling station is not a nuisance per se, but when properly constructed and properly operated is a legal business, not injurious to the general welfare, public safety, or morals. Slaughter v. Post, supra; Kirkwood Brothers v. City of Madisonville, 230 Ky. 104, 18 S. W. (2d) 951; Indian Refining Co. v. Berry, 226 Ky. 123, 10 S. W. (2d) 630. There are many other cases from this and other jurisdictions holding ordinances of like character and effect to be invalid; however, it would unreasonably lengthen this opinion to do more than refer to them without discussion or quotation. Dangel v. Williams, 11 Del. Ch. 213, 99 A. 84, and cases therein cited; State v. Withnell, 78 Neb. 33, 110 N. W. 680, 8 L. R. A. (N. S.) 978, 126 Am. St. Rep. 586; Austin v. Thomas, 96 W. Va. 628, 123 S. E. 590, 38 A. L. R. 1490; Boyd v. Board of Council of City of Frankfort, 117 Ky. 199, 77 S. W. 669, 25 Ky. Law Rep. 1311, 111 Am. St. Rep. 240. See also, McQuillen on Municipal Corporations, sec. 398, and note 74 under section 1031, and authorities cited.

As a matter of first impression, it would appear that the act is in contravention of the latter part of section 60 of our Constitution, but, since our conclusion that it is invalid for reasons already indicated is supported by such a wealth of authority, the determination of that question is unnecessary.

Judgment reversed, with directions to set aside the judgment granting the injunction and to dismiss the petition.