## Standard Oil Co. of Kentucky v. Bentley et ux.

(Decided June 18, 1935.)

J. WOODFORD HOWARD, W. PORTER MAYO, CHAS. G. MID-
DLETON and J. J. HETTINGER for appellant.

C. P. STEPHENS, B. M. JAMES, JOE HOBSON and E. P. HILL,
Jr., for appellees.

OPINION OF THE COURT BY CREAL, COMMISSIONER—
Reversing.

T. J. Bentley and Nora Bentley, husband and wife,
have recovered judgment against the Standard Oil Com-
pany of Kentucky for $4,000 damages to their property
alleged to have been caused by the installation and op-
eration of an oil and gasoline storage plant on adjacent
property and the company is appealing.

It appears in evidence that some time about 1928,
appellant and appellees acquired lots in Allen, a town
of the sixth class in Floyd county. There was a small,
cheaply constructed building on the lot purchased by
appellees which was torn down and replaced by a thir-
teen-room hotel building. While it was understood that
appellant had purchased its lot for the purpose for
which it is now being used, it did not erect and install
its storage plant until 1930. In addition to the build-
ings and equipment, the plant consists of two large
gasoline tanks and six large tanks for the storage of
oil. It is alleged in the petition that appellant in the
operation of its plant and equipment has wrongfully,
unlawfully, unnecessarily, and unreasonably caused and
continues to cause to be emitted therefrom nauseating,
dangerous, unhealthy, and destructive gas fumes and
odors to the great discomfort, ill health, and inconven-
ience of residents and citizens residing in the neighbor-
hood and especially to the discomfort, ill health, etc., of
appellees as well as injury to their property; that before
the construction of the plant, appellees were able to
procure fire insurance on their property, but since its
construction have been unable to do so; that prior to the
construction of the plant they were able to and did rent
their hotel building for $75 per month, but that since
and because of the things complained of, they have been
unable to rent it for a sum in excess of $25; that this
condition will continue unless the plant and equipment
is removed and the acts complained of discontinued;
that their property had been permanently damaged by

reason of the wrongful and unlawful acts complained of in the sum of $10,000 for which amount they prayed judgment.

Appellant filed motion to require appellees to elect which of the inconsistent causes of action alleged in the petition they would prosecute, that is, whether they would prosecute the action for temporary or for permanent damages to the property. It also interposed a demurrer, and trial of the issues made by answer traversing the allegations of the petition before a jury resulted in a verdict followed by the judgment appealed from.

A number of grounds are urged for reversal which have been extensively briefed by counsel for respective parties, but since the judgment must be reversed for reasons presently indicated, it will be unnecessary to discuss other questions or phases of the case, nor will it be necessary to enter into an extensive review of the evidence. It is sufficient to say that the evidence for appellees strongly tends to sustain the allegations of their petition with respect to the gases and odors and to show that they so permeated the building and premises as to render them practically unhabitable; that there are some leaking valves that permit the constant escape of gasoline from which gases and odors arise. There is likewise evidence to establish great depreciation in the value of their property since appellant erected its plant. On the other hand, there is evidence for appellant conducing to show that the plant is modern in every respect; that it is kept clean and sanitary; and that gas fumes and odors are not thrown off to an extent to interfere with adjoining property owners. There is considerable evidence to indicate that the depreciation in the value of appellees' property is due to economic conditions other than to the construction and operation of the gas and oil plant.

To entitle appellees to recover it was necessary to show that appellant's plant was a nuisance per se or that it was so maintained, operated, and conducted as to become a nuisance. It would be difficult to catalogue the business or commercial activities which this court has held to be or not to be nuisances per se and this difficulty grows with the ever-increasing complexity of commercial activities and judicial decisions. There are many kinds of businesses which are not desirable in

residential, hotel, or apartment house districts and which may in a measure affect the value of adjacent property, but which the court has held not to be nuisances per se. For example we list a few which this court has held not to be nuisances per se, although many of them were adjacent to residential property: City Prison, City of Bowling Green v. Rogers, 142 Ky. 558, 134 S. W. 921, 34 L. R. A. (N. S.) 461; Blacksmith, Marrs v. Fiddler, 69 S. W. 953, 24 Ky. Law Rep. 722; Stone v. Burkhead, 161 Ky. 745, 171 S. W. 417; Morris v. Roberson, 137 Ky. 841, 127 S. W. 481, 136 Am. St. Rep. 323; Electric Plant, Hughes v. General Electric Co., 107 Ky. 485, 54 S. W. 723, 21 Ky. Law Rep. 1202; Baseball Park, Alexander v. Tebeau, 71 S. W. 427, 24 Ky. Law Rep. 1305; Beer Garden, Pfingst v. Senn, 94 Ky. 556, 23 S. W. 358, 15 Ky. Law Rep 325, 21 L. R. A. 569; Livery Stable, Hyden v. Terry, 108 S. W. 241, 32 Ky. Law Rep. 1198; Taulbee v. Miller, 225 Ky. 516, 9 S. W. (2d) 296; Railroad Round House, Chesapeake & O. R. Co. v. Scott, 197 Ky. 636, 247 S. W. 735.

Gasoline and oils are necessities and the storage and handling of these products is a legitimate business. This court in keeping with the general trend of authority has held that plants for the storage, sale, and distribution of these products are not nuisances per se, although most of the cases in this jurisdiction relate to filling stations where gasoline and oils are stored and sold by retail. While not on so large a scale as the wholesale storage and distribution plants, the same gases, fumes, and odors attend the operation of filling stations. In the case of Indian Refining Co. v. Berry, 226 Ky. 123, 10 S. W. (2d) 630, 632, it is said:

"The law is settled that a filling station is not a nuisance per se, but a lawful structure, and necessary in the prosecution of a legitimate business."

And in Slaughter v. Post, 214 Ky. 175, 282 S. W. 1091, 1092, this court said:

"A gasoline filling station, properly constructed, and properly operated, is not per se a nuisance."

See, also, McCown v. Gose, 244 Ky. 402, 51 S. W. (2d) 251, and Kirkwood Bros. v. City of Madisonville, 230 Ky. 104, 18 S. W. (2d) 951.

In Great Northern Refining Co. v. Lutes, 190 Ky.

451, 227 S. W. 795, 797, appellee recovered judgment for damages growing out of the storage of crude petroleum in a tank of 15,000 barrel capacity, the grounds for recovery being practically the same as those alleged in this action. The judgment was reversed because of error in the admission or rejection of evidence and in the instructions given the jury. The opinion voices the general view that a lawful business cannot be a nuisance per se, but the manner in which it is conducted may be such as to create a nuisance, and quotes from Joyce on Nuisances, sec. 388, wherein it is said:

> "It is held that the nearby location in relation to a dwelling house of coal oil and gasoline tanks is not of itself a nuisance carrying liability, even though such tanks are also near to steam railroads, there being no showing of negligence in construction or want of care to prevent ignition from sparks from locomotives, and no just grounds of apprehension, as claimed, from fire and consequent injury; and the fact that the rental and salable value of the property has been decreased is held insufficient."

Following these domestic cases which are in harmony with the general rule prevailing in other jurisdictions, we are constrained to hold that appellant's plant is not a nuisance per se. If it has in fact become a nuisance by reason of the way in which it has been operated and conducted, the condition is temporary and may be corrected. It therefore follows that the damage, if any, to appellees' property is temporary.

Under the instructions given, the jury could only find permanent damages, the measure of damages being fixed as the difference, if any, between the fair, reasonable market value of appellees' property immediately before the construction and operation of the tanks and plant and immediately afterward. From what we have already said, it is manifest that these instructions were erroneous. If the plant was not of itself a nuisance, it is immaterial whether it was intended to be or was permanent, and if the conditions complained of can be corrected at a reasonable cost, temporary damage at most is all that could be recovered. The measure of damage in such cases where the property is occupied by the owner is the diminution in the value of its use during the continuation of the nuisance, but, if not occupied by the owner, the measure

of damage is the depreciation in the rental value during the continuation of the nuisance. City of Madisonville v. Nisbit, 239 Ky. 366, 39 S. W. (2d) 690, and cases therein cited.

Wherefore the judgment is reversed for proceedings consistent with this opinion.