## Whitaker v. Green River Coal Co. et al.

Dec. 16, 1938.

44

BRATCHER & MOORE for appellant.
MAURICE D. BURTON for appellees.

OPINION OF THE COURT BY JUDGE FULTON—Reversing.

The appellant, Hallie Whitaker, filed suit in the Butler circuit court against the appellees, Green River Coal Company et al., for the $500 penalty provided in Section 2739-51, Kentucky Statutes:

"No owner, or tenant of any land containing coal shall open or sink, or dig, excavate or work in any coal mine or shaft on such land, within five feet of the land dividing said land from that of another person or persons, without the consent, in writing, of every person interested in, or having title to, such adjoining land in possession, revision, or remainder, or the guardians of any such persons as may be infants, nor without in addition thereto the approval of the Chief of the Department of Mines and Minerals. If any person shall violate this section, he shall be liable to the person or persons injured thereby, who may sue for same, in the sum of

five hundred dollars; provided, that nothing in this act shall deprive such injured person or persons from pursuing any and all other remedies now provided or that may hereafter be provided by law for recovery of damages for injuries done to their property.''

The lower court sustained a demurrer to the petition on the ground that this section of the statute is unconstitutional and, the appellant declining to plead further, the petition was dismissed. From the judgment of the court dismissing the petition this appeal is prosecuted.

The first question naturally presenting itself is whether or not the Legislature has power to subject a violation of a statute to a specific penalty and award this penalty to the injured party to be recovered in an action.

As far as we can ascertain, this direct question has not been passed on in Kentucky, as such penal statutes are rare in this State. Indeed, it seems as if this is the only instance in this State of exactly this kind of penal statute. It is true we have a number of statutes penal in their nature, such as those awarding double and treble damages for certain statutory violations, but apparently no other providing a specific penalty only, which is to be recovered in an action by the injured party.

We find the almost unanimous trend of authority to be that the Legislature has power to impose a penalty for violation of a statute and the method of recovery thereof; that it may provide for a recovery of the penalty in an action by the commonwealth or in an action by the injured party and may provide for an apportionment of the penalty between the commonwealth and the injured party or may provide that the entire penalty go to the party injured in a civil action. The rule is thus stated in 21 R. C. L. 208:

''On the other hand, it is undoubtedly competent for the legislature to subject any particular offense both to a penalty and a criminal prosecution. The mode in which penalties shall be enforced, whether at the suit of an individual, or at the suit of the public, and what disposition shall be made of the amount collected, are merely matters of legislative

discretion. And in the absence of any constitutional restriction, the legislature may lawfully make such disposition of the penalty imposed as will, in its discretion, best subserve the purpose of a particular enactment. Instead of giving the whole of the penalty to the state or the county, or of dividing the penalty and providing for a qui tam action, the whole of the penalty may be given to the person aggrieved, although it exceeds compensation for the injury sustained."

Numerous authorities from other jurisdictions are cited in support of this view and to the same effect is the doctrine laid down in 25 C. J. 1179, et seq. We are inclined to agree that this is the correct rule on the subject and that the Legislature did not exceed its authority in fixing this penalty and in providing that it might be recovered in an action by the injured party.

The next question naturally presenting itself is whether or not this statute is unconstitutional as being repugnant to the "due process" clause of the constitution, and only one aspect of the statute, which we will hereinafter point out, gives us any concern along this line.

The "due process" clause of the constitution does not operate as a limitation upon the reasonable and proper exercise of the police power of the state. To determine whether or not regulation of the mining industry comes within the purview of the police power, we have only to exercise our common knowledge which tells us that this is a highly hazardous industry, involving the safety of thousands of miners and the preservation and use of highly valuable property continuously in danger of destruction or damage from the careless use of adjoining properties.

As applied to the character of regulation herein involved, so well recognized is this fact that we have three separate and distinct arms of the law directed at a violation of the statute in controversy—(1) a civil action for damages; (2) a statute making it a misdemeanor punishable by a heavy penalty; and (3) an action for the $500 penalty involved in this case.

The act in question is an exact duplicate of a West Virginia act enacted more than one hundred years ago and the constitutionality thereof has been upheld by the

West Virginia Supreme Court of Appeals in the case of Mapel v. John, 42 W. Va. 30, 24 S. E. 608, 32 L. R. A. 800, 57 Am. St. Rep. 839. In a well-reasoned opinion, which we approve, as far as it goes, that court, which is the court of one of the most highly developed mining states in the Union, sets out fully the necessity for, and wisdom of, this statute, as evidencing the reasonableness of the exercise of the police power of the state in the enactment thereof. It would serve no useful purpose to quote at length from this opinion because, as indicated above, only one feature of this statute presents a weighty question to our minds, which question is not covered by, or mentioned in, that opinion.

Suffice it to say, we have no trouble whatsoever in reaching the conclusion that the establishment of this ten foot barrier between adjoining mining properties is essentially reasonable and desirable and that the Legislature was unquestionably justified in the exercise of the police power of the state in establishing it.

We therefore pass to the only feature of the act which we feel deserves serious consideration, and this is, that provision of the act making its operation and effect dependent on the consent of the adjoining owners.

It will be observed that there is involved in this act a dual aspect of the exercise of the police power, in that it is enacted for a public purpose, the safety of miners and, secondly, this power is invoked to secure private right by prescribing a correlative duty on the part of each adjoining owner so to use his land as not to injure or endanger the land of the other.

The public aspect thereof is taken care of in this act by providing that this barrier may be encroached upon or abolished provided the assent of the Chief of the Department of Mines and Minerals is obtained thereto. We think this is the obvious purpose of the provision requiring his consent. When he gives his consent there is still left the second aspect of the statute which prevents encroachment except where the consent of the adjoining owner is first secured and the validity of this provision is the only subject left for discussion.

There is some apparent conflict of authorities with reference thereto but a close analysis thereof convinces us that such cases as hold a provision similar to this to be invalid base their conclusions more on the unreason-

able or arbitrary features contained in the acts invalidated rather than on the idea that the operation of such an act cannot be predicated on the consent of an individual.

The case of McCown v. Gose et al., 244 Ky. 402, 51 S. W. (2d) 251, holds that an ordinance requiring one desiring to erect a filling station in a residential block to obtain written consent of the owners of two-thirds of the property in such block is void, but it is apparent that the decision is based in a large part on the arbitrary, unreasonable and non-uniform features thereof taken in connection with this consent aspect. A full collation of authorities is contained in this case and an able discussion thereof, and we will not again go fully into that feature, but only discuss briefly the cases cited therein which were decided by the United States Supreme Court where similar consent provisions were involved.

In the case of State of Washington ex rel. v. Roberge, 278 U. S. 116, 49 S. Ct. 50, 73 L. Ed. 210, 86 A.. L. R. 654, the Supreme Court declared void an ordinance requiring the written consent of the owners of two-thirds of the property in a residence district within four hundred feet of a philanthropic home for children or old people as a prerequisite to the building of such home, but it is apparent that the real basis of the opinion was the reason appearing in the following language of the court [page 52]:

> "It is not suggested that the proposed new home for aged poor would be a nuisance. We find nothing in the record reasonably tending to show that its construction or maintenance is liable to work any injury, inconvenience or annoyance to the community, the district or any person. The facts shown clearly distinguish the proposed building and use from such billboards or other uses which by reason of their nature are liable to be offensive."

This case does not in any way conflict with the case of Cusack Co. v. Chicago, 242 U. S. 526, 37 S. Ct. 190, 61 L. Ed. 472, L. R. A., 1918A, 136, Ann. Cas. 1917C, 594, but on the contrary quotes that case and distinguishes it and approves of the doctrine therein announced.

We need look no further than the Cusack Company

Case, supra, for absolute and definite authority of the highest type, for in that case the Supreme Court went further than we shall go by this opinion when it upheld a city ordinance, containing a consent feature, making the operation of the ordinance dependent on a majority consent—a majority of residents of a city street. The ordinance was:

"It shall be unlawful for any person, firm or corporation to erect or construct any billboard or signboard in any block on any public street in which one half of the buildings on both sides of the street are used exclusively for residence purposes without first obtaining the consent in writing of the owners or duly authorized agents of said owners owning a majority of the frontage of the property on both sides of the street in the block in which such billboard or signboard is to be erected, constructed or located."

The Cusack Case definitely disposes of the only question which we feel deserves serious consideration, as indicated supra, namely the consent feature, in the following portion of the opinion:

"The ordinance in the case at bar absolutely prohibits the erection of any billboards in the blocks designated, but permits this prohibition to be modified with the consent of the persons who are to be most affected by such modification. The one ordinance permits two thirds of the lot owners to impose restrictions upon the other property in the block, while the other permits one half of the lot owners to remove a restriction from the other property owners. This is not a delegation of legislative power, but is, as we have seen, a familiar provision affecting the enforcement of laws and ordinances."

This is in exact accord with our view of the act in controversy; that in legal effect it is the same as if the act were in two sections, the first providing absolutely for the maintenance of this ten foot barrier (which is undoubtedly valid) and the second section providing that either or both of the parties affected might consent for abolition or modification of the barrier to any extent he or they might be desirous of agreeing on; and not forgetting, either, that the public aspect of the situation must have first been satisfied by obtaining the consent of the State Department of Mines.

We need no more direct or persuasive authority than this to confirm us in our judgment that the consent provision of the adjoining mine owner contained in the Act in controversy, is not a delegation of legislative power, but only a permission for the modification of the prohibition contained in the Act.

Mr. Justice McKenna dissented in that case. We do not doubt the probability of disagreement in any multiple judge court by which this question might be considered. It serves no purpose to be dogmatic in such a state of case. It behooves us then to attempt to shake off the shackles of legal inertia in favor of progress and practicality.

The ever-increasing complexity of modern business and social conditions demands that the courts exercise a liberal rather than a restrictive attitude toward legislative acts enacted pursuant to the police power inherent in the exercise of governmental functions and, that such act should not be set aside lightly, but only when it is plainly violative of some constitutional provision.

Increasing contacts, antagonisms and conflict of human interests have produced a growing general recognition of the desirability of the exercise of, and the necessity for, mutually cooperative action and restraint by fellowmen and neighbors for the common good and welfare of each other, as well as the general public, which more and more impels the courts to uphold police regulatory measures, the mere mention of which in the not far distant past would have caused a genuine case of constitutional "jitters" on the part of lawyers and courts.

When a court is concerned with the problem of determining whether legislative action is valid or invalid, in a matter concerning which it is obvious that lawyers and judges might well disagree, and about which they actually disagree, as here, why should not lawyers and judges in this character of case seek to grope their way out of the haze of academic legal principles and to get into the sunshine of ordinary common sense and reason—uphold the law if it is that character of regulation which their common knowledge recognizes as reasonable and desirable, that the common run of men, not lawyers, would accept without question as being the eminently correct and fitting thing to do under the circumstances.

This is, we feel, the mental approach by which our courts may keep pace with progress and make themselves useful and honored servants of the public, for whose welfare, after all, we interpret the constitution and the laws. And in our opinion such an approach is not an invitation to, or recognition of, the right of laymen to be the interpreters of the constitution for the courts.

By having this mental approach, the legal profession and the courts may hope to escape the atmosphere of mustiness and obstructionism ascribed to them almost with unanimity by laymen and thereby prevent the further upspringing of an endless variety and number of administrative boards and agencies handling a vast variety of matters, to the loss of business, profit and prestige to the legal profession.

Considering the act in this light, we have no doubt as to its constitutionality and the judgment is therefore reversed for further proceedings consistent with this opinion.

The whole court sitting; Chief Justice Stites dissenting.

Stites, Chief Justice (dissenting).

I am unable to agree with so much of the opinion of the majority as determines that the act in question validly leaves its operation to the mere whim of an adjoining landowner. I do not conceive that the opinion of the majority denies the existence of the principles which seem to me to be controlling. The disagreement rests simply in the application of these principles to the question presented.

Section 2 of the Constitution of Kentucky provides: "Absolute and arbitrary power over the lives, liberty and property of freemen exists nowhere in a republic, not even in the largest majority."

It has long been settled by decisions of this court that the Legislature cannot delegate the police power of the state to a citizen. Owensboro & Nashville R. Co. v Todd, 91 Ky. 175, 15 S. W. 56, 12 Ky. Law Rep. 726, 11 L. R. A. 285; McCown v. Gose, 244 Ky. 402, 51 S. W. (2d) 251, and cases there cited. Indeed, the principle has been extended to the granting of arbitrary power to public boards or agencies. In Commonwealth v. House,

177 Ky. 829, 198 S. W. 218, this court held invalid an order of the city of Richmond which required building permits to be obtained from the City Council, but which prescribed no standard for determining when a permit should or should not be granted. We said (page 830, 198 S. W. page 218):

"In the recent case of City of Monticello v. Bates, 169 Ky. 258, 183 S. W. 555, the court announced the rule that it was essential to the validity of municipal ordinances placing restrictions upon the lawful use of property that they specify the rules and conditions to be observed in such business and admit of the exercise of the privilege by all citizens alike who comply with such rules and conditions, and that they do not admit of the exercise, or of an opportunity for the exercise, of any arbitrary discrimination by the municipal authorities between citizens who comply with such rules and conditions. Here the ordinance is almost identical with that held to be invalid in that case. It gives no effect to the character of the building, and prescribes no standard with which the citizens must comply, or by which the discretion of a council is to be controlled. On the contrary, it gives to the council the arbitrary power to discriminate between the citizens of the city, by granting a permit to one and refusing a permit to another, although the circumstances and conditions may be exactly the same. We therefore conclude that the ordinance in question is invalid."

The case of Tilford v. Belknap, 126 Ky. 244, 103 S. W. 289, 31 Ky. Law Rep. 662, 11 L. R. A., N. S., 708, is a leading one on the question here presented. In that case, we held invalid an ordinance of the city of Louisville providing that no frame dwelling should be erected within the city unless the owners had obtained permission in writing from all persons owning brick or stone structures within sixty feet of the proposed building. We said (page 250, 103 S. W. page 290):

"The ordinance involved * * * is both unreasonable and discriminatory, for it attempts to confer upon a private citizen * * * power of the most arbitrary character over the property of his neighbors within a radius of 60 feet of his own house. * * *

"The ordinance is intended to confer and ac-

tually does confer, not a discretion to be exercised upon a consideration of the circumstances of each case, but a naked and mandatory power to give or withhold consent at the mere whim or according to the caprice of the custodian of the power. In brief, it is purely an arbitrary power, which acknowledges neither guidance nor restraint, and the exercise of which might in every instance result in oppression and unjust discrimination. * * * For these reasons, we do not hesitate to condemn the ordinance as unconstitutional and void."

It seems to me that the principles enunciated in these cases are sound and that the Act before us is invalid for the reason that it prescribes no standard for determining when an adjoining landowner or, indeed, the Chief of the Department of Mines and Minerals may properly grant or withhold consent to the operation. The power granted is purely arbitrary and is in the face of sec. 2 of our Constitution. It is possible under the Act for one mine owner to operate and another to be prohibited from operation although they are in exactly the same situation, if one has a tractable neighbor and the other has not. The decisions of the Supreme Court of the United States relied on in the majority opinion were not construing the Constitution of Kentucky. Neither was the opinion of the Supreme Court of Appeals of West Virginia, construing the Constitution of Kentucky when it held a similar statute of West Virginia to be valid in Mapel v. John, 42 W. Va. 30, 24 S. E. 608, 32 L. R. A. 800, 57 Am. St. Rep. 839. We have ourselves construed and applied sec. 2 of our Constitution, and I am of the opinion that the decisions of this court and not those of some other court should control the matter before us.

I am authorized to state that Judge Perry concurs in this dissent.