74 So.2d 544 (1954)
PHILLIPS PETROLEUM CO.
v.
ANDERSON et al.
Supreme Court of Florida. Special Division B.
August 31, 1954.
Mabry, Reaves, Carlton, Fields & Ward, Tampa, for appellant.
Duane Anderson, Miami, Bentley & Shafer, Lakeland, for appellees.
HOBSON, Justice.
This is an appeal prosecuted by Phillips Petroleum Company ("Phillips") from a judgment of the circuit court reversing an order of the City of Lakeland Board of Adjustment which in turn had reversed a determination of the Lakeland Building Inspector which denied Phillips' application for a building permit to construct a gasoline filling station on certain property in Lakeland. Because of the view we take of the case it is necessary to state the facts and describe the proceedings below at some length.
Negotiations by Phillips to purchase the property which is the subject of this litigation commenced around November, 1952. Inquiries regarding the zoning of the property were made to the Building Inspector. Whether or not the Building Inspector was at this time informed of Phillips' intention to build a filling station on the property is not clear from the record. At any rate, the Inspector replied that the property was zoned "Business A", or "Retail Business", as in fact it was and is. The "Business A" classification under the city zoning ordinance specifically authorizes the construction of filling stations. Phillips thereupon purchased the property on January 6, 1953 for the price of $21,500.
The property in question, described as Lots 1 and 2, Block B. Palmola Park, is located *545 on the southeastern corner of the intersection of Florida Avenue and Palmola Street in Lakeland. Florida Avenue is a main thoroughfare of the city, running north and south. Palmola Street intersects Florida Avenue at a right angle but does not cross it, projecting one block due east of Florida Avenue to Hollingsworth Drive. Study of the city zoning map, certified here as an original exhibit, indicates that properties on both sides of Florida Avenue are zoned "Business A" to a point just south of Palmola Street and including the Phillips property. Except for the corner lots on Florida Avenue, property fronting on both sides of Palmola Street and on the northerly edge of Hibriten Way (which runs parallel to, and is the next street south of, Palmola Street, and also extends east to Hollingsworth Drive) is zoned "Residential A-2", and so is a considerable amount of the property along Florida Avenue south of Hibriten Way. Most of the property fronting on the south side of Hibriten Way, however, is "Residential A-1", which is the highest residential zoning classification prescribed by the city ordinance, "A-2" differing therefrom mainly in that the lower classification has smaller house and lot area requirements, and in "A-2" professional people (doctors, dentists, musicians, lawyers, architects, and the like) may maintain offices in their residences, while this is not permitted in "A-1".
The city zoning map shows that the area of the city zoned for business is roughly in the shape of a cross, the foot of which is represented by the southern tip of the "Business A" zone, on Florida Avenue, to which allusion has been made. The "Residence A-2" zone along Palmola Street, and elsewhere in the vicinity as above indicated, was apparently intended by the city zoning authorities as a "buffer zone" between the "Business A" and "Residence A-1" districts, in anticipation of the future commercial growth of the city and expansion of its business sections in accordance with the trends already taken.
The photographs certified here as original exhibits are unusually complete and revealing. They show clearly that the Phillips property is located at the edge of a concentrated and active business community which extends northward up Florida Avenue. Within two blocks of Phillips' property, among many other businesses, are four filling stations, one of which is diagonally across the street from Phillips, or about seventy feet from the corner of Phillips' property. Across Florida Avenue from Phillips' property to the west is a food store or delicatessen. Adjacent to Phillips' property on the east, in the section zoned "A-2", is a residence owned and occupied by one of the appellees here, while the remaining appellees own other residential properties to the east and southeast along Palmola Street and Hibriten Way.
The City of Lakeland Zoning Ordinance was adopted in 1950. Section 7 of this ordinance covers the "Business A" classification and excludes all but specified uses. It permits, in addition to filling stations, such uses as tourist courts or motels, stores and shops, banks, offices, studios, hotels, newspaper businesses, automobile parking lots, transportation passenger stations and depots, moving pictures or theaters, billiard or pool parlors, bowling alleys, skating rinks, restaurants, cafes, drive-ins, undertaking parlors, ice pick-up stations, self-service or automatic laundries, and bakeries, as well as metal working, blacksmithing, tinsmithing, and plumbing establishments.
This case would probably not have arisen were it not for Subsection 20 of Section 7 of the ordinance, which reads as follows:
"(20) All of the above listed described, and permitted uses in a Business `A' district shall be permitted in such Business `A' districts, provided that no operation shall be carried on which is injurious to the operating personnel of the business or to other properties, or to the occupants thereof by reason of the objectionable emission of cinders, dust, dirt, fumes, gas, odor, noise, refuse matter, smoke, vapor, vibration, or similar substances or conditions."
When Phillips made formal application to Mr. Ruby, the Building Inspector, for *546 a permit to build a filling station on its property, the application was denied by Mr. Ruby in a letter containing this language: "* * * it is held that the operation of a fillng station in this location would be injurious to the occupants of adjacent properties by the objectionable emission of dust, dirt, fumes, gas, odors, noise, smoke, and similar substances and conditions".
Although the point is controverted by appellees, the record contains a strong inference that Mr. Ruby was assisted in reaching the above conclusion by his employer, the City Commission, which, prior to the formal denial of Phillips' application, had gone on record as opposing Phillips' construction of a filling station on its property, although the Commission had no jurisdiction whatever over the matter. One of the Commissioners operates a Texaco station and another is wholesale distributor for Standard Oil, although neither of these Commissioners voted upon the motion regarding the Phillips station. When Mr. Ruby was making a statement before the Board of Adjustment, upon appeal from his ruling, however, the following colloquy took place:
"Chairman Pickard: Are there any other questions any one wishes to ask Mr. Ruby?
"Mr. McKay: You were instructed by the Commission to refuse the permit?

"Mr. Ruby: That's the way that letter read.

"Mr. McKay: You signed that?
"Mr. Ruby: No sir, Mr. Rogers wrote that.
"Mr. McKay: Is that right, Mr. Rogers? The City Commission instructed Mr. Ruby to refuse the permit?
"Mr. J.C. Rogers, City Attorney: Let me explain: The City Commission considered this matter and I told them there was a question about whether or not under Subsection (20) the Building Inspector could refuse. They, in essence, just said not to issue it.

"Now, I afterwards talked to Mr. Ruby about it and explained to him it was a matter which he would have to decide himself regardless of what the Commission told him and I went over this section with him. I told him I was of the opinion he had a right to reject it if he wished. Upon that, later, or at that time I believe, he stated to me he was going to reject it because of the conference after he came to me about it.

"Mr. McKay: It is your opinion then that after the City Commission instructs Mr. Ruby or other department heads to act that it's within their prerogative to not act in accordance with their instructions?
"Mr. Rogers: If they find 
"Mr. McKay: If they so wish?
"Mr. Rogers: If they feel like under the rules and laws that they are acting upon it would not be right to follow that, they have the prerogative of refusing to do it. They must exercise their own judgment. That's what I told him." (Italics added)
After a full hearing before the Board of Adjustment at which both Phillips and the residential property owners were represented, the Board reversed the determination of the Building Inspector and ordered the issuance of the permit applied for, finding, inter alia, "The evidence clearly indicated that the proposed filling station is to be one of the ordinary regular filling stations as is seen from corner to corner throughout our city and there is no testimony in the record that this filling station would be different from the ordinary filling station." Regarding Subsection 20, the Board stated in part that "the listing of businesses which might operate in Business `A' district means in truth that those businesses which are operated in the usual manner of like businesses and are enumerated in the Business `A' section of the Ordinance *547 may be permitted in the districts zoned Business `A' and that the only time that subsection 20 can be brought into consideration is at such time as it is shown that such business is not operated in the usual customary manner." The residential property owners petitioned the circuit court for certiorari, under the provisions of Chapter 176, F.S.A. In its return to the petition the Board stated in part that "the operation of a filling station by the Phillips Petroleum Company at their proposed site would be no more offensive or objectionable than at any other available business site within said zoning district." Phillips filed a motion to quash, raising, inter alia, the constitutionality of Subsection 20, which is also raised here. The circuit court saw no issue of fact presented, but after receiving exhibits and taking a view of the premises, held that "the governing body of the city clearly intended, by the language of sub-section (20), to cushion the harsh impact between certain types of business which, by the very nature of their normal and ordinary operation, would be objectionable and injurious to `other properties * * * or to the occupants thereof'". The court denied Phillips' motion to quash, and set aside the order of the Board of Adjustment.
We are of the view that Subsection 20 is the unsound core of the whole matter before us. To summarize, because of the uncertainty of the wording and applicability of Subsection 20, the city attorney was in doubt as to whether the Building Inspector could lawfully refuse to issue the permit applied for. The Building Inspector was finally convinced that he was authorized to do what he had in effect been directed to do. The Board of Adjustment believed that the Building Inspector had misinterpreted Subsection 20, which was intended to restrict only extraordinary uses. The circuit court held that the Board had misinterpreted Subsection 20, which was intended to make the whole matter discretionary with the Building Inspector. The appellant here contends, inter alia, that the Board's findings were supported by competent, substantial evidence, and it was therefore error to reverse the Board, while appellees assert that the question determined by the Board was purely a matter of law, depending upon the interpretation of Subsection 20, as to which the Board's conclusion was erroneous. Appellant here contends that Subsection 20 is merely a restriction upon the use to which a building whose construction is authorized elsewhere in Section 7 may be put, pointing out that a filling station is by well settled law "not a nuisance per se." Mercer v. Keynton, 121 Fla. 87, 163 So. 411, 414, while appellee takes the position that the ordinance in the first instance forbids construction of a building for a contemplated use whose nature would violate Subsection 20. Appellant further contends that Subsection 20 is unconstitutional, and we agree.
We are of the opinion that Subsection 20 represents an unconstitutional delegation of legislative power, and, if this were not so, it should be stricken under the "void for vagueness" rule. The present case is a definitive object lesson in the operation of such a provision and an illustration of the soundness of the rule which requires an intelligible principle to be laid down for the guidance of an administrative official in the performance of his duties.
In City of West Palm Beach v. State ex rel. Duffey, 158 Fla. 863, 30 So.2d 491, 492, we said:
"Zoning is an exercise of police power and ordinarily the exercise of such power in zoning has relation to structural qualities and the use of structures when considered in reference to the protection of health, welfare, safety and morals of the public. When regulations are to be imposed in order to promote health, welfare, safety and morals it is necessary that exactions be fixed in the ordinance with such certainty that they not be left to the whim or caprice of the administrative agency and the ordinance must have some relation to a lawful purpose  to promote health, welfare, safety and morals."
*548 Referring again to Subsection 20 to ascertain the standards provided for the Building Inspector and the Board of Adjustment, we observe that "no operation shall be carried on which is injurious to * * * other properties, or to the occupants thereof by reason of the objectionable emission of cinders, dust, dirt, fumes, gas, odor, noise, etc. * * *" Objectionable to whom? Apparently to the "occupants" or owners of "other properties". To take noise for an example, it might be said that it is objectionable in some degree to any adult with good hearing. As a general proposition, the less noise the better. Thus an occupant of property can always be found to object to an enterprise in proximity to his property where the slightest noise is made, and to contend, reasonably enough, that the noise is "injurious" to him because he objects to it. Such a test, which is in reality no test at all but an "escape hatch" which may be used as a mere excuse for denial when political pressures render it expedient, places the owner of business property wholly at the whim and mercy of his neighbors, whether they occupy residential property or operate competing businesses. It is not the public welfare which is at issue in such case, but the tendency of immediate neighbors to object, and this although the property in controversy is plainly zoned for business. If the result in the present case were permitted to stand, there is virtually no business use to which the property in question could ever be put which might not be "objectionable" and therefore "injurious" to owners or occupants of surrounding properties. Yet zoning ordinances making consent of surrounding property owners a condition precedent to authorization to operate a filling station or garage have been declared unconstitutional as an unlawful delegation of legislative power or as an indirect method of attempting to enjoin a private nuisance. See, e.g., Dangel v. Williams, 11 Del. Ch. 213, 99 A. 84; Wasilewski v. Biedrzycki, 180 Wis. 633, 192 N.W. 989; and McCown v. Gose, 244 Ky. 402, 51 S.W.2d 251. In Harden v. City of Raleigh, 192 N.C. 395, 135 S.E. 151, relied upon by the court below and by appellees here, the complete wording of the section of the ordinance in question does not appear from the opinion, and the constitutionality of the ordinance or any part thereof was not before the Supreme Court of North Carolina, according to an express statement in its opinion. That is not the case here.
The provision here under consideration is to be distinguished from one which uses the words "public nuisance". The term "public nuisance" has a definite significance at common law and is a "term of art" which, when properly used, may cure an ordinance or statute which would be otherwise too vague. Compare the wording of the provision quoted in Ficht v. McMullen, 142 Fla. 638, 195 So. 610.
We find that Subsection 20 of Section 7 of the City of Lakeland Zoning Ordinance is void, and we also find this subsection to be severable from the remainder of the ordinance without avoiding any other provision thereof.
This opinion is not, of course, intended to prejudice, and it does not prejudice, the right to relief of any interested party if the proposed filling station should become a public or private nuisance.
The judgment of the circuit court must be reversed, and the order of the Board of Adjustment, which was based upon the non-applicability of Subsection 20, must be reinstated. It is so ordered.
Reversed with directions.
TERRELL, Acting Chief Justice, and SEBRING, and PATTERSON, JJ., concur.