**DEPARTMENT FOR NATURAL RESOURCES AND ENVIRONMENTAL PROTECTION of the Commonwealth of Kentucky et al., Appellants,**

v.

**NO. 8 LIMITED OF VIRGINIA, a Virginia Corporation, Appellee.**

Court of Appeals of Kentucky.

May 9, 1975.

Dean Hill Rivkin, Appalachian Research and Defense Fund of Kentucky, Inc., Lexington, John M. Rosenberg, Appalachian Research and Defense Fund of Kentucky, Inc., Prestonsburg, for intervening defendants-appellants, Henry Hurt, J. R. Kelly, Nancy Kelly and Floyd Whitaker.

Ed W. Hancock, Atty. Gen., Commonwealth of Kentucky, David D. Beals, Asst. Atty. Gen., Frankfort, for defendant-appel-

lant, Dept. for Natural Resources and Environmental Protection of the Commonwealth of Kentucky.

Oscar H. Geralds, Jr., Moloney & Moloney, Lexington, for amicus curiae, Sierra Club.

Frederick W. Whiteside, Jr., Lexington, for amicus curiae, League of Women Voters of Kentucky.

Harry M. Caudill, Whitesburg, for amicus curiae, Kentucky Black Lung Ass'n, Citizens' League to Protect the Surface Rights, Floyd County Save Our Land Club, Inc., and Knott County Property Owners Protective Ass'n, Inc.

Bert T. Combs, Tarrant, Combs & Bullitt, Richard W. Iler, Charles R. Simons, Tarrant, Combs & Bullitt, Louisville, for appellee; J. W. Craft, Jr., Hazard, of counsel.

Fred G. Francis, Prestonsburg, Bruce Stephens, Jr., Hazard, for appellee, of counsel.

LUKOWSKY, Justice.

This is an appeal from a judgment of the Franklin Circuit Court which declared KRS 350.060(8) to be unconstitutional and granted appropriate ancillary injunctive relief. We affirm.

The declared purpose of Chapter 350 of the Kentucky Revised Statutes is to provide such regulation and control of the strip mining of coal as to minimize or prevent its injurious effects on the people and resources of the commonwealth. KRS 350.020.

The apposite portions of KRS 350.060 are as follows:

"(1) No operator shall engage in strip mining without having first obtained from the department a permit . . ."

"(8) Each application shall also be accompanied by a statement of consent to have strip mining conducted upon the area of land described in the application for a permit. The statement of consent shall be signed by each holder of a freehold interest in such land. Each signature shall be notarized. No permit shall be issued if the application therefor is not accompanied by the statement of consent. This statement of consent shall not be required for coal mined under the provisions of KRS chapters 351 and 352."

The source of subsection 8 is section 2 of Chapter 373 of the 1974 Acts of the General Assembly. Section 1 of that chapter, which is not codified in the Kentucky Revised Statutes, is as follows:

"It is the intent of the General Assembly in this Act to declare that the notarized statement of consent required by Section 2 of this Act is a perfectly legitimate, right, and proper requirement to protect the public safety and welfare as it pertains to the broad form deed. It is also the intent of the General Assembly that this Act does not affect any other form of contract in any manner, nor affect underground mining in any manner."

It is immediately apparent that subsection 8 does not apply to situations in which the owner of the mineral rights also owns the surface rights to the land or in which the owner of the mineral rights was granted specific authority to conduct strip mining in the deed which conveyed the mineral rights to him. It is an obvious retrospective diminution of rights granted by a specific form of contract bare of any attempt to control the noxious aspects of the strip mining operation. It is equally apparent that subsection 8 does not involve the construction and validity of broad form deeds.

Article 1, Section 10 (1) and Amendments 5 and 14 of the Constitution of the United States and Sections 13, 19 and 242 of the Constitution of the Commonwealth of Kentucky provide that the legislature may not impair the obligations of a contract and that private property may not be

taken for a public use without just compensation. However, government could hardly go on if, to some extent, values incident to property could not be diminished without paying for every such change in the general law. As long recognized, some values are enjoyed under an implied limitation, and must yield to the police power. But obviously the implied limitation must have its limits or the contract and due process clauses are emasculated. Pennsylvania Coal Co., v. Mahon, 260 U.S. 393, 43 S.Ct. 158, 67 L.Ed. 322, 28 A.L.R. 1321 (1922).

■ The limits are that the police power may be used so as to invade private rights only if the legislation bears a real and substantial relation to the public health, safety, morality or some other phase of the general welfare. Louis K. Liggett Co. v. Baldridge, 278 U.S. 105, 49 S.Ct. 57, 73 L.Ed. 204 (1928); City of Covington v. Sanitation District No. 1 of Campbell and Kenton Counties, Ky., 301 S.W.2d 885 (1957).

■ This dissection exposes the "gut issue" here. May subsection 8 be justified as a legitimate exercise of the police power?

In order to be justified it must stand as an evironmental conservation measure. It may well be that the General Assembly, in the exercise of its legislative wisdom, might strike a balance between the "energy crunch" and the necessity to conserve the environment which, for example, would prohibit strip mining entirely, prohibit strip mining which would remove tillable soil from production, limit strip mining to areas which have less than a given percentage of grade, require extensive restoration and reforestation of land to be stripped, limit the activity in areas where the watershed and wildlife might be adversely affected and even protect aesthetic beauty. Blue Diamond Coal Co. v. Neace, Ky., 337 S.W.2d 725 (1960).

But that is not this case. Here the legislation is ineffective as an environmental conservation measure. It does no more than delegate to an individual, a privy of a party to the contract which severed the mineral, a veto over the use of land by the other party to the contract. It puts the surface owner in a position to be paid again for what he or his predecessor in title has already received compensation. Martin v. Kentucky Oak Mining Co., Ky., 429 S.W.2d 395, 398 (1968).

In Martin, supra, at 397 we demonstrated that the consent of the surface owner bears no rational relationship to environmental conservation.

"The court is fully aware of the great public concern with the conservation problems attendant upon strip and auger mining, and the urgent necessity to protect the soil and the water courses from destruction and pollution. However, counsel for the landowners, and for those amicus curiae who side with them in arguing that the broad form deed does not permit strip or auger mining, frankly concede that a decision of this court upholding their contention as to the construction of the deed will not stop strip or auger mining. They admit that in Pennsylvania and West Virginia, where the courts have held that the broad form deed does not authorize strip or auger mining, that type of mining is even more prevalent than in eastern Kentucky. And of course it is common knowledge that strip mining has been done on a large scale in western Kentucky where the broad form deed was not commonly used."

Subsection 8 delegates to countless private individuals who own interests in surface estates from which the mineral has been severed the right to undo whatever environmental conservation purpose the legislation may have by granting their consent, for a consideration, to surface mining on their land. It is beyond cavil that the

primary purpose and effect of subsection 8 is to change the relative legal rights and economic bargaining positions of many private parties under their contracts rather than achieve any public purpose. It is, therefore, axiomatic that subsection 8 is unconstitutional. Tilford v. Belknap, 126 Ky. 244, 103 S.W. 289 (1907); McCown v. Gose, 244 Ky. 402, 51 S.W.2d 251 (1932).

For an excellent resume and analysis of the legal principles involved here which reaches the same conclusion see, Caudill, Kentucky's Experience with the Broad Form Deed, 63 Ky.L.J. 107 (1974–1975).

The judgment is affirmed.

All concur.