Julius DOOCHIN, Alan Doochin, and Ben Doochin, Comprising a Partnership known as Jab Co.; Judo Mining Co., Plaintiffs-Appellants,

v.

Donald RACKLEY, V. W. Hamby, Katherine O'Dell, Vivian Thompson, Hiwassee Land Company, Floyd Myers, Honorable Ann R. Tuck, Commissioner, Tennessee Department of Conservation, Otis I. Parker, Steven E. Roberts, Dale Studer, Dr. Ralph Ross, Dr. Eugene Fowinkle, Constituting the Board of Reclamation Review of the State of Tennessee; Honorable William M. Leech, Jr., Attorney General of the State of Tennessee, Defendants-Appellees.

Supreme Court of Tennessee.

Jan. 12, 1981.

Valerius Sanford, Joel M. Leeman, Gullett, Sanford & Robinson, Nashville, for plaintiffs-appellants.

Dean Hill Rivkin, Knoxville, for defendants-appellees Rackley, Hamby, O'Dell, Thompson and Myers.

Claudius C. Smith, Asst. Atty. Gen., Nashville, for defendants-appellees Tuck, Parker, Roberts, Studer, Ross, Fowinkle and Leech.

George M. Derryberry, Miller & Martin, Chattanooga, for defendant-appellee Hiwassee Land Company.

## OPINION

BROCK, Chief Justice.

The facts in this case are not disputed and the sole issue is the constitutionality of Chapter 164 of the Tennessee Public Acts of 1977, codified at T.C.A. §§ 64–511 (Supp. 1980) and 58–1544(a)(6)(B) (Supp.1979). The second of these code sections has been repealed by the Tennessee Coal Surface Mining Law of 1980, enacted subsequent to the proceedings below.[1] See Ch. 908, 1980 Tenn.Public Acts, codified at T.C.A. § 59–8–301, et seq. (Supp.1980). Since the comparable provision of the 1980 Act has the same effect, we intend for this decision to encompass it as well. See note 5, infra. For clarity we will discuss the statutes as they were codified at the time of the proceedings below.

The two statutes concern the conflict between landowners and the owners of mineral rights in the same property. They are challenged as impairing contract rights, see U.S.Const. Art. 1, § 10; Tenn.Const. Art. 1, § 20, as violating due process and equal protection, see U.S.Const. Amends. V, XIV; Tenn.Const. Art. 11, § 8, Art. 1, §§ 8, 17, and as encroaching on the functions of the Judiciary, see Tenn.Const. Art. 2, § 2. We hold that the statutes are constitutional.

Defendants Rackley, Hamby, O'Dell, Thompson and Hiwassee Land Company each own land in White County, Tennessee. Defendant Myers lives on part of the land or nearby. The land is used primarily for timber production and is forested in hardwoods and pines. Some is used for farming and as personal residences.

The mineral rights to these tracts are owned by plaintiff JAB Co., a partnership composed of plaintiffs, Julius Doochin and his sons, Alan and Ben Doochin. Plaintiffs' interest in the minerals is traceable back along the chain of title to several deeds executed in the 1920s and early 1930s. At that time the mineral and surface estates were severed by instruments that conveyed the land but reserved the mineral rights. One deed, for example, reserved "all oil, gas, coal and any other minerals or mineral substances on or under the said tract, with full rights to enter thereon, explore for, mine or otherwise procure any such minerals by any proper or necessary means with all necessary rights and ways to remove such products therefrom." Most deeds simply reserved "all oil, gas, saline and mineral substances of any nature whatsoever, with right of ingress and egress into, over, and under the said land for the purpose of exploring for, producing and removing any of such substances." The deeds do not specify the methods of extracting minerals that

---

1. The second provision, T.C.A. § 58–1544(a)(6)(B), was recodified as § 59–8–205(1)(F)(ii) (1980) prior to its repeal by the 1980 Act. See note 5, infra.

were contemplated. However, the surface mining method, more commonly known as strip mining, was unknown in White County until the 1940s, according to uncontroverted testimony in the record.

Plaintiff, JUDO Mining Co., sought to strip mine coal from the land pursuant to a lease agreement with JAB. In January, 1979, plaintiffs applied to the Tennessee Department of Conservation for a strip mining permit. They did not submit with their application certain information required by the challenged statutes, discussed more fully below. They asserted that the statutes were unconstitutional and that compliance was not necessary. The permit was denied because of their failure to comply.

The defendant Board of Reclamation Review upheld the denial of the permit, after a hearing.[2] On appeal, the Chancery Court for White County held that the statutes are constitutional. Plaintiffs appealed that decision to the Court of Appeals, and the case was transferred to this Court, since the sole determinative issue is the constitutionality of the statutes. See T.C.A. 16–4–108, formerly § 16–408.

To understand the challenged Act, one must recognize the state's interest in regulating strip mining. Since 1955, all mine operators have been required to obtain a license or permit from the state. See § 3, Ch. 238, 1955 Tenn.Public Acts. More detailed regulation of strip mining has been created by The Tennessee Strip Mining Law of 1967, The Tennessee Surface Mining Law of 1972, the 1977 Act challenged in the instant case, and the Tennessee Coal Surface Mining Law of 1980. See Ch. 43, 1967 Tenn.Public Acts; Ch. 547, 1972 Tenn.Public Acts; Ch. 164, 1977 Tenn.Public Acts; Ch. 908, 1980 Tenn.Public Acts.

Strip mining can be hazardous to the environment, to agriculture, and even to human safety. The legislature has summarized those hazards as follows:

"The general assembly hereby finds and declares that the unregulated exploration for and surface mining of coal can cause soil erosion and landslides; lake, stream, and air pollution; and accumulation and seepage of contaminated water; can contribute to floods; impairs the value of land for forestry, agricultural, or other purposes; adversely affects fish and wildlife and their habitats; counteracts efforts for the conservation of soil, water, and other natural resources; adversely affects cultural resources; impairs neighboring owner's property rights; creates fire hazards; and in general creates conditions inimical to life, property, and the public welfare, so as to require the exercise of the state's police power in the regulation of exploration and surface mining of coal." T.C.A. 59–8–302 (Supp. 1980).[3]

Strip mining temporarily or permanently destroys the surface of the land, depending on the success of reclamation efforts. Thus, strip mining is incompatible with the surface owner's enjoyment of his estate. See Skivolocki v. East Ohio Gas Co., 38 Ohio St.2d 244, 313 N.E.2d 374 (1974); Stewart v. Chernicky, 439 Pa. 43, 266 A.2d 259 (1970). This incompatibility and the physical and aesthetic effects on the environment distinguish strip mining from traditional deep mining.

Since 1967, applicants for permits to strip mine most minerals have been required to submit "identification of the source of the operator's legal right to enter and mine the minerals on the land affected by the permit." T.C.A. 58–1544(a)(6)(A) (Supp.1979), subsequently § 59–8–205(1)(F)(i) (1980).[4]

Concerning that requirement of evidence of the right to strip mine, the legislature

---

**2.** The review procedure is set forth in T.C.A. 59–8–218, formerly § 58–1556, et seq. The 1980 Act repealed the provision and provides a similar procedure. See T.C.A. 59–8–321 (Supp. 1980).

**3.** Similar statements of Purpose accompanied the 1967 and 1972 Acts. See T.C.A. §§ 58–1524 (1968), 59–8–203 (1980).

**4.** As it applied to coal, the provision was repealed and replaced by a similar provision in the 1980 Act, § 59–8–307(b)(6) (Supp.1980). The 1980 Act adds the requirement that permit applicants indicate whether the right to strip mine is the subject of pending court litigation. Id.

enacted the 1977 Act that is challenged in this case. Section 2, codified at T.C.A. 58–1544(a)(6)(B) (Supp.1979), provided in relevant part,

"... If the surface estate has been severed from the mineral estate, such evidence may be provided by either, (a) a deed, lease, or other document which severs the mineral rights and expressly permits the removal of minerals by surface mining or a certified extract of the appropriate provisions of such documents; or (b) a deed, lease, or conveyance which severs the mineral rights without specific provisions for surface mining and an accompanying affidavit by the current surface state owner agreeing to the removal of such minerals by surface mining. ..."[5]

Section 3, T.C.A. 64–511 (Supp.1980), provides,

"In any instrument heretofore or hereafter executed purporting to sever the surface and mineral estates which does not describe the manner or method of mineral extraction in express and specific terms, it shall be presumed that the intent of the parties to the instrument was that the minerals be extracted only in the principal manner and method of mineral extraction prevailing in Tennessee at the time the instrument was executed. This section is not intended to exclude evidence that would otherwise be admissible to show the intentions of the parties."

The Act applies only to strip mining of coal.

In their permit application, plaintiffs did not submit the documents expressly allowing strip mining or the affidavits of surface owners' consent. Nor did they attempt to obtain the surface owners' consent.[6] They contend that ownership of the mineral rights entitles them to destroy the surface at least temporarily, despite the fact that other individuals own and enjoy the rights to that surface. We disagree.

■ In analyzing deeds of conveyance the traditional common law rule, of course, is to ascertain the intent of the contracting parties in light of circumstances existing at the time. *Campbell v. Tennessee Coal, Iron, & R. Co.*, 150 Tenn. 423, 265 S.W. 674 (1924) is instructive. In that case the owner of the mineral rights to certain land sought to quarry limestone. The 1870 deed that severed the mineral and surface estates reserved

"all the mines or minerals contained or imbedded in or on said tract; also the right to enter at any time ... to explore for mines or mineral, with the right to make excavation to erect works or machinery for the purpose of manufacturing such minerals as may be found on or contiguous to said land ... and to do any and everything necessary to be done for the successful mining and manufacturing or exporting any minerals that may be discovered on or in said land, but agreeing to pay said Lyle a reasonable compensation for any actual damage that may be done to the surface of the land." *Id.* at 425, 265 S.W. at 674.

This Court stated that while "minerals" technically includes limestone, it was impos-

---

**5.** The 1980 version of the section provides,

"In cases where the private mineral estate has been severed from the private surface estate, the applicant shall submit:

"(1) The written consent of the surface owner to the extraction of coal by surface mining methods;

"(2) A copy of a conveyance that expressly grants or reserves the right to extract coal by surface mining methods; or

"(3) If the conveyance does not expressly grant the right to extract coal by surface mining methods, the surface-subsurface legal relationship shall be determined in accordance with § 64–511; provided, that nothing in this part shall be construed to authorize the commissioner to adjudicate property rights disputes." T.C.A. 59–8–308(k) (Supp. 1980).

**6.** Julius Doochin testified that he never sought the landowners' permission to strip mine. Plaintiffs' attorney did state before the Board of Reclamation Review that he had unsuccessfully attempted to contact a Mr. O'Dell, the landowner of record of one of the parcels according to the tax assessor's office. Mrs. O'Dell, however, testified that her husband had died in 1969 and that no one had sought her permission to strip mine in the instant case.

sible to know with certainty what the parties intended. The Court relied on the language of the deed and the fact that the limestone was located on or near the land's surface and concluded that the reservation of mineral rights did not include the right to quarry limestone. To conclude otherwise would "[destroy] the conveyance, for by quarrying the limestone the entire surface would be made way with." *Id.* at 431, 265 S.W. at 676.

■ In the instant case, since strip mining was unknown in White County when the mineral and surface estates were severed, we conclude that the contracting parties did not intend for one party to own the right to use and enjoy the surface of the land and for another party to own the right to completely disrupt that surface. Strip mining cannot be presumed to have been within the contemplation of the parties. Consequently, no right to strip mine accompanied ownership of the mineral rights. Nor is there any evidence that the parties intended a contrary result. Similar conclusions have been reached by most courts that have examined such conveyances, although the facts surrounding each case vary somewhat. *See, e. g., Phipps v. Leftwich,* 216 Va. 706, 222 S.W.2d 536 (1976); *Skivolocki v. East Ohio Gas Co., supra; Smith v. Moore,* 172 Colo. 440, 474 P.2d 794 (1970); *Stewart v. Chernicky, supra; Brown v. Crozer Coal and Land Co.,* 144 W.Va. 296, 107 S.E.2d 777 (1959); *DuBois v. Jacobs,* 551 S.W.2d 147 (Tex.Civ.App.1977). *See generally* 70 A.L.R.3d 383.

■ Since neither the plaintiffs nor their predecessor in title was ever conveyed the legal right to strip mine, it follows, and we hold, that the 1977 Act did not unconstitutionally affect plaintiffs' contract rights or deprive them of property without due process. The Act merely codified the common law governing the construction of deeds and other such contracts.

■ Nor does the Act encroach upon the domain of the Judiciary. Rather, the statutes codify the age-old, common law rule that the intent of the parties governs in the construction of contracts, deeds, wills and

the like. The statutes allow a permit applicant to prove his right to strip mine by a conveyance that shows, either expressly or in light of other evidence, that the parties intended to convey this right. If there is no such evidence, the statutes set forth a test traditionally applied in contract law: the parties are presumed to have contemplated extraction by the principal manner prevailing at the time. *See, e. g., Phipps v. Leftwich, supra; Smith v. Moore, supra; Stewart v. Chernicky, supra; Brown v. Crozer Coal and Land Co., supra.* Of course, any evidence that indicates that the parties specifically contemplated unusual, existing or future-developed methods of extraction would prevent the presumption from applying. The statutes create no irrebuttable presumptions and exclude no evidence from consideration. *See Brewer v. Aetna Life Ins. Co.,* Tenn., 490 S.W.2d 506 (1973). They do not affect the courts' customary function of ascertaining the parties' intent based upon all the evidence. The statutes also recognize that a surface owner may consent to strip mining.

■ We further conclude that the legislative classification, strip mining of coal, does not deny equal protection. To pass constitutional muster, the classification must be reasonably related to legitimate public interests. The legislature listed six reasons for the Act:

"(a) To facilitate and require the demonstration of a clear understanding between the owners of surface and mineral estates in land concerning their respective rights to use and occupy or injure the surface of the land;

"(b) To protect the security of titles to land and improvements thereto;

"(c) To promote the free alienability of land;

"(d) To prevent hardship and injustice to surface or mineral owners arising from uncertainty of the law;

"(e) To promote the conservation and the full and efficient use of all natural resources of the state, including the

land, the making of improvements to the land, the growth of agriculture, the development of new industry and the general economic well-being of the state and its people; and

"(f) To foster certainty and uniformity in the operation of the law." § 1, Ch. 164, 1977 Tenn.Public Acts.

While it is not stated that coal has caused more of these problems than other strip-mining minerals, that conclusion is implicit in the Act. If there is another mineral that has been strip mined in Tennessee as extensively as has coal or that consequently has caused as widespread effects, it has not been brought to our attention. We also note that the new Tennessee Surface Mining Law of 1980 pertains solely to strip mining of coal. *See*, T.C.A. 59–8–301, *et seq.* (Supp.1980). The challenged classification may not be perfect, but we think it is reasonable.

The judgment of the Chancellor is affirmed. Costs are taxed against appellants.

FONES, COOPER and HARBISON, JJ., concur.