**Garnett WARD and Commonwealth of Kentucky, Appellants,**

v.

**William W. HARDING, Freda Harding, et al., Appellees.**

No. 88–SC–825–DG.

Supreme Court of Kentucky.

July 15, 1993.

Rehearing Denied Sept. 30, 1993.

John S. Palmore, Kevin Michael McGuire, Jackson, Kelly, Williams and Palmore, Lexington, J.K. Wells, Wells, Porter, Schmitt and Walter, Paintsville, for appellees.

Chris Gorman, Atty. Gen., John S. Gillig, Asst. Atty. Gen., Frankfort, for Com. of Kentucky.

Joe Francis Childers, Jr., Phillip J. Shepherd, Shepherd & Childers, Thomas Joseph Fitzgerald, Frankfort, for Commonwealth, Inc., amicus curiae.

LAMBERT, Justice.

■ With ratification of Section 19(2) of the Constitution of Kentucky,[1] the people swept away decades of litigation and numerous court decisions addressing the proper construction of so-called "broad form" deeds. By the amendment, the people have declared that henceforth in instruments of conveyance of the type at issue here, it shall be held, in the absence of clear and convincing evidence to the contrary, that coal extraction be only by the known methods in the area at the time the instruments were executed. That the Constitution may be so amended is an indisputable proposition. Recognized in Section 4 of the Constitution is that all power is inherent in the people and that government may exercise only such authority as the people may grant. To the extent there may be any conflict between (1) and (2) of Section 19 of the Constitution, the latter shall prevail under the rule set forth in *Commonwealth v. Howard,* 297 Ky. 488, 180 S.W.2d 415, 418 (1944):

"It is also the rule that if there be conflict [between constitutional provisions] it is the duty of the court to uphold that portion containing express language relating to the

John M. Rosenberg, Appalachian Research and Defense Fund of Kentucky, Inc., Prestonsburg, for appellants.

1. Amendment proposed by Acts 1988, Ch. 117, § 1, ratified November, 1988. The full text of Section 19(2) of the Constitution of Kentucky is as follows:

"In any instrument heretofore or hereafter executed purporting to sever the surface and mineral estates or to grant a mineral estate or to grant a right to extract minerals, which fails to state or describe in express and specific terms the method of coal extraction to be employed, or where said instrument contains language subordinating the surface estate to the mineral estate, it shall be held, in the absence of clear and convincing evidence to the contrary, that the intention of the parties to the instrument was that the coal be extracted only by the method or methods of commercial coal extraction commonly known to be in use in Kentucky in the area affected at the time the instrument was executed, and that the mineral estate be dominant to the surface estate for the purposes of coal extraction by only the method or methods of commercial coal extraction commonly known to be in use in Kentucky in the area affected at the time the instrument was executed.

subject, rather than to one dealing with matters in general terms."

Moreover, a constitutional amendment necessarily annuls any and all former provisions of the Constitution which conflict with it. *Hatcher v. Meredith*, 295 Ky. 194, 173 S.W.2d 665, 668 (1943).

The issue joined between appellants and appellees is whether a broad form deed mineral owner may, by virtue of that instrument alone, engage in surface mining. The trial court ruled in favor of appellants, the surface owners, holding, *inter alia*, that:

"The parties to the original conveyance contemplated mining by the underground method [in a manner] which would not destroy the surface...."

Judgment was entered enjoining appellees from entering upon the property of appellants for the purpose of surface, strip or auger mining. On appeal, the Court of Appeals reversed. Relying on this Court's decision in *Akers v. Baldwin*, Ky., 736 S.W.2d 294 (1987), and the broad grant of rights in the original instrument of conveyance, that Court held that appellees, the mineral owners, held the dominant estate and were entitled to use the surface in any manner necessary or convenient for recovery of the minerals. Such additional facts as are necessary for an understanding of the case will be presented hereafter.

The genesis of this controversy was early in the twentieth century. John C.C. Mayo and others traveled throughout Eastern Kentucky and obtained instruments of conveyance whereby large numbers of landowners conveyed the minerals underlying their real property. Typically Mayo deeds and others of their genre conveyed all minerals which underlay the surface, granted rights to use the surface to such an extent as was necessary or convenient to gain access to the minerals, contained an express waiver of liability for damages to the surface, and reserved to the surface owner only such rights as were consistent with the other provisions of the instrument. *See generally, Akers v. Baldwin, supra,* and Robert M. Pfeiffer, *Kentucky's New Broad Form Deed Law—Is it Constitutional?*, 1 Journal of Mineral Law & Policy 57 (1985). For the most part, this Court's decisions rendered during the first half of the twentieth century demonstrated an inclination toward enforcement of the literal language of the instrument and resolution of ambiguity against the grantor. Among such decisions one finds *McIntire v. Marian Coal Co.*, 190 Ky. 342, 227 S.W. 298 (1921), which held that the mineral owner, upon a showing of necessity, had the right to exclude the surface owner and take his house and garden, provided compensation was paid for the improvements destroyed. In *Kentucky Diamond Mining and Development Co. v. Kentucky Transvaal Diamond Co.*, 141 Ky. 97, 132 S.W. 397, 398 (1910), the conveyance was construed to

·"cover everything [including diamonds] that may be found on the land, [whether] the parties in fact contemplated at the time that a particular thing might be found on the land...."

The courts relied in part on the familiar rule that deeds should be construed against the grantor because it is he who selects the language.[2] It should be emphasized, however, that the early decisions, with the exception of dictum in *Rudd v. Hayden*, 265 Ky. 495, 97 S.W.2d 35 (1930), were exclusively in

---

**2.** The legitimacy of this rule may be doubtful with respect to Mayo and other broad form deeds acquired by sophisticated businessmen from poor and uneducated landowners. *See* Robert M. Pfeiffer, *Kentucky's New Broad Form Deed Law—Is It Constitutional?*, 1 Journal of Mineral Law & Policy 57 (1985), which states

"The broad form deed is, as its name suggests, a mere form. Many of these deeds are identical except for particulars such as names and addresses. Indeed, in some counties those who acquired mineral rights by use of the broad form deed ordered specially printed deed books so that county clerks could simply fill in the blanks with the pertinent information." Pfeiffer at 58.

"Mayo rarely bought land outright, preferring instead to acquire just the minerals, using broad form deeds that he prepared." Pfeiffer at 61.

*See also Wollums v. Horsley*, 93 Ky. 582, 20 S.W. 781 (1892).

For a graphic description of a typical transaction, see *Watson v. Kenlick Coal Company*, 422 U.S. 1012, 95 S.Ct. 2639, 45 L.Ed.2d 677 (1975), Douglas, J., dissenting from denial of certiorari, quoting Harry Caudill, *Night Comes to the Cumberlands* 72–74 (1963).

the context of deep mining methods of coal extraction. *See Martin v. Kentucky Oak Mining Co.*, Ky., 429 S.W.2d 395 (1968), Hill, J., dissenting at 401.

With the advent of equipment capable of moving massive amounts of earth, the controversy took on a new dimension. As technology progressed, mineral owners and their successors in interest acquired the capability of removing previously inaccessible or economically unfeasible coal by means of strip mining or other mining methods which caused profound disturbance of the surface. The issue which then emerged was whether or to what extent, and with or without compensation for damages, the mineral owner was entitled to destroy the surface to extract the coal. This Court's decision in *Buchanan v. Watson*, Ky., 290 S.W.2d 40 (1956), soon provided the answer.

Purporting to rely upon the doctrine of *stare decisis*,[3] the *Buchanan* Court stripped the landowner of any right to restrict the mining method and rendered him a virtual tenant on his land. To understand the breadth of its holding, we quote at length from *Buchanan:*

> "The deed in this case conveyed virtually all rights necessary to carry out the mining of the coal, including a waiver of damages. The reservations of timber and agricultural use in favor of the grantor were to be exercised only insofar as such uses were consistent with the rights conveyed to the grantee. It was obvious that the estate reserved to the grantor was to be subservient to the dominant estate of the grantee. The paramount purpose of the conveyance was to enable the grantee, or his successor in title, to remove the coal from under the surface of this land. The value of the land lay under the surface, not on it.

> "The rights of the respective owners of the surface and of the minerals underneath in similar deeds have been determined and declared. The owner of the mineral has the paramount right to the use of the surface in the prosecution of its business for any purpose of necessity or convenience, unless this power is exercised oppressively, arbitrarily, wantonly, or maliciously, in which event the surface owner may recover for damages so occasioned.

> "The validity and enforceability of a waiver of damages have been recognized as well as that of such grants of mining rights just discussed. The only qualification imposed in exercising these rights with respect to any given situation is that in order to be relieved of liability for damages, the rights must not be exercised arbitrarily, wantonly, or maliciously." (Citations omitted.) *Id.* at 43.

In the years which have followed *Buchanan*, there have been various efforts toward modification of its holding,[4] but not until *Akers v. Baldwin, supra*, was there any appreciable change, and even then its central holding remained wholly intact. In *Akers*, this Court's plurality opinion invalidated a portion of KRS 381.940 which is virtually identical to the Constitutional Amendment here under review. In so doing, the Court relied upon the separation of powers provisions of the Constitution of Kentucky, § 27, 28 and 109, and held that

> "[C]ourts are the proper forums to determine the issues presented in the interpretation of *past* transactions, as in this case....

> "The General Assembly has, by enacting this statute, reached across the years and has arbitrarily determined the rights of the parties and their successors to deeds and other documents." *Akers* at 309.[5]

---

**3.** *But see Akers v. Baldwin, supra*, Stephenson, J., dissenting, at 312: "There was no such rule of law until *Buchanan* manufactured it."

**4.** *See Department for Natural Resources and Environmental Protection v. No. 8 Limited of Virginia*, Ky., 528 S.W.2d 684 (1975), holding subsection (8) of KRS 350.060 unconstitutional. *Blue Diamond Coal Co. v. Campbell*, Ky., 371 S.W.2d 483 (1963); *Kodak Coal Co. v. Smith*, Ky., 338 S.W.2d 699 (1960); *Wiser Oil Co. v. Conley*, Ky.,

346 S.W.2d 718 (1960); and *Croley v. Round Mountain Coal Co.*, Ky., 374 S.W.2d 852 (1964). *See also, Martin v. Kentucky Oak Mining*, Ky., 429 S.W.2d 395 (1968), in which the previous unanimity of the Court was lost and the holding in *Buchanan* directly and persuasively challenged by Justice Hill.

**5.** This quotation from *Akers* is curious in view of its apparent contradiction of *Kodak Coal Co. v.*

Significantly, *Akers* contains only the most inexplicit Contract Clause analysis and nothing which could be construed as decisive of whether the statute violated Article I, Section 10 of the Constitution of the United States or the Taking Clause of the Fifth and Fourteenth Amendments. In an earlier decision, however, the Court invalidated an Act which required the signature of the surface owner before strip mining would be permitted. *Department for Natural Resources and Environmental Protection v. No. 8 Limited of Virginia*, Ky., 528 S.W.2d 684 (1975). In so holding, it was determined that the purpose of the Act was to modify the economic bargaining power of private parties under their contracts rather than serve any public purpose. Essential to the holding was the conclusion that the original contract granted the mineral owner the right to engage in surface mining.

Prior to addressing the issues we believe to be controlling, it is necessary to address a number of subsidiary questions. First, appellants contend, as they have in both courts below, that the real property they own is not covered by the deed on which appellees rely. The trial court resolved this issue against appellants and the Court of Appeals affirmed. Being unable to conclude that the trial court's finding in this respect was clearly erroneous, we affirm that portion of the opinion of the Court of Appeals. CR 52.01.

■ Appellants further claim exemption from broad form deed law on the grounds that the instrument here may not be so characterized. They rely on a provision of the deed as amended which excepted in favor of the grantors all walnut, chestnut and locust timber and all other timber twelve inches in diameter or greater. The trial court found this timber exception sufficient to avoid application of other and broader language of conveyance in the deed. On this the Court of Appeals reversed the trial court concluding that the timber reservation was unduly emphasized in derogation of the language of conveyance. *Kodak Mining Co. v. Smith*, Ky., 338 S.W.2d 699 (1960).

While the timber exception here is particularized, the granting clause of the deed is virtually identical to that found in numerous other instruments which have been characterized as broad form deeds. It contains the magic phrase which authorizes use of the surface in any manner which may "be deemed necessary or convenient for the exercise and enjoyment of said property rights and privileges." We have no doubt that this instrument is a broad form deed and the Court of Appeals correctly so held. *Buchanan v. Watson, supra; Akers v. Baldwin, supra.*

■ The final preliminary issue we must confront is the absence of any lower court decision as to whether the Constitutional Amendment ratified in November 1988 and codified as Section 19(2) of the Constitution of Kentucky is in violation of the Constitution of the United States. This has been protracted litigation. The trial court rendered its final judgment in 1984 and the Court of Appeals' opinion was rendered in September of 1988. Proceeding along with this case and involving similar issues was *United States of America v. The Stearns Co.*, 949 F.2d 223 (6th Cir.1991). It was believed that the foregoing case might resolve or assist in the resolution of the federal constitutional issue presented here, but the final decision concluded that the instrument in question was not a broad form deed and thus the Kentucky Constitutional Amendment had little or no effect on that case.

During the pendency of the *Stearns* case, various orders were entered in this Court holding the instant case in abeyance. Moreover, there were motions for remand to the trial court and responses to those motions, but finally, and despite their pending motion to remand, appellees conceded that this Court could decide the federal constitutional issue in this proceeding provided they were

---

*Smith*, Ky., 338 S.W.2d 699, 700 (1960), as follows:

"The record shows the very destructive nature of the auger mining process and, like the Chancellor, we are aware that this type of operation is not consistent with the best princi-

ples of land conservation. However, the question before us involves the legal rights of the parties, and as we have pointed out in the earlier opinions, the preservation of the land is a matter for the Legislature."

given benefit of certain evidence which would have been introduced if the case had been remanded to the trial court. The evidence in question appears in a five-page affidavit executed by William W. Harding, one of the appellees in this proceeding. For purposes of this case, the essential facts contained in the Harding affidavit have been taken as true. In substance, it appears that without the right to strip mine, substantial quantities of coal, perhaps millions of tons, will be economically unfeasible to remove, and that it will not be possible to produce direct evidence as to the original parties' actual intent at the time of mineral severance. Appellants respond that the foregoing evidence is irrelevant to the constitutional issue before the Court.

This Court is not unmindful of the provisions of Section 110(2)(a) of the Constitution of Kentucky which confers upon it appellate jurisdiction only. We recognize that an appellate court is not an appropriate forum for the presentation of evidence or the determination of facts. If the foregoing were applied literally, it would be necessary to remand this case to the trial court with directions that the parties be given an opportunity to present evidence and that the trial court, in light of such evidence, rule upon the federal constitutionality of Section 19(2) of the Constitution of Kentucky. Of course, such a ruling would condemn the parties to additional years of litigation and result in the unwise use of judicial resources.

Rather than indulge in such excessive litigation and recognizing that this Court must, in time, decide the issue here, we believe it is appropriate to treat the Kentucky Constitutional Amendment as we would treat any new authority, whether decisional, statutory or constitutional, which came into being subsequent to the lower court decisions. The parties have brought to our attention the fact of the Constitutional Amendment and have asserted their constitutional challenges to it. The Attorney General of Kentucky has sought and was granted leave to intervene in

this action and has filed a brief and argued in support of the constitutionality of the Amendment. In view of all of the foregoing, and it appearing that the constitutional issue is squarely before us, we are constrained to give these litigants their day in this Court without further delay.

We begin our discussion of the constitutionality of the 1988 Amendment with a further review of the law as it existed immediately prior thereto. Our most recent decision in this arena was *Akers v. Baldwin, supra*, a decision in which three Justices concurred in the plurality opinion and one Justice concurred by separate opinion. In dissent, three Justices rendered two separate opinions. Despite their differences as to the result, an examination of these four opinions reveals a remarkable agreement as to the fundamental question of the intention of the parties at the time the instruments were created. The plurality opinion by Chief Justice Stephens acknowledged that

"It is highly unlikely that any parties to a deed or lease would enter into an agreement which creates two separate estates in land knowing or contemplating that one of those estates—the surface—could and would be totally destroyed, and leaving that estate owner without anything, without damages to the injured party being allowed. The obliteration of the surface would never have been anticipated by the grantor of the mineral estate." *Id.* at 306–307.

"The evidence in this case and the evidence generally is that strip mining, as it is practiced today, was non-existent in the early 1900's, when most, if not all, of the broad form deeds were executed. This Court takes judicial notice of that fact." *Id.* at 308–309.[6]

Similarly, Justice Vance, concurring with the majority, recognized that:

"The express reservation of mining rights contained in the 'broad form' deeds, includ-

6. Nevertheless, *Akers* candidly expressed its rejection of the parties' intention as affecting the right to strip mine.
    "The right to the minerals carries with it the right to mine them. That a certain method of

mining was known at the time the document was executed is simply not relevant. A sale implies the right to obtain and use the item sold." *Id.* at 305.

ing in some instances the waiver of damage for subsidence and for use of timber below a certain size, plainly indicates to me that the parties to these deeds contemplated deep mining only." *Id.* at 311.

In dissent, Justice Stephenson expressed the following view:

"I was under the impression that a basic rule of construction of deeds was to gather the intention of the parties from the language of the instrument.

"If it is clear from the deed that the parties contemplated underground mining, how can it be said that the deed gives the right to strip mine, which is inferred in *Buchanan* from ownership of the coal?" *Id.* at 314.

"I would overrule *Buchanan* in its entirety together with its progeny." *Id.* at 315.

In dissent, Justice Lambert likewise stated that *Buchanan v. Watson* should be overruled:

"Nowhere in the instrument, however, is the mining method identified, and the timber is reserved to the surface owner as is the right to freely use the surface for agricultural purposes. As strip mining was unknown at the time of execution of the instrument and significant surface rights were reserved to the landowner, it is clear that the parties did not contemplate harm to the surface of the land in the course of mineral removal. They clearly expected the minerals to be removed by the only existing methods." *Id.* at 316.

As the foregoing quotations from the Court's opinions in *Akers v. Baldwin* demonstrate, the Court was unanimous in its conclusion that the parties to such instruments did not contemplate strip mining as the means by which the coal would be removed from the earth and that the original conveyance anticipated no such mining right. Ne-

vertheless, and despite this view, four members of the Court concluded that the doctrine of *stare decisis* and the desirability of stability in the law were sufficient to sustain the rule in *Buchanan v. Watson* despite the implicit recognition that it was erroneous. Modification of the *Buchanan* rule to authorize the award of damages is testament to the Court's view that the original grantors did not contemplate surface destruction.

For those with an interest in exploring the progression of the law which has brought us to this point, the plurality opinion in *Akers v. Baldwin* provides a comprehensive picture. However, to avoid digression, it is sufficient to say that *Buchanan* was born of a fallacy (or as Justice Stephenson stated, "*Buchanan* [was] an aberration in the law of minerals. There is absolutely no prior authority for the holding," (*Akers* at 312) [7]), but since its rendition, has been sustained by the doctrine of *stare decisis* and in the interest of legal stability. *See Akers v. Baldwin* at 304, and *Akers,* Vance, J., concurring, at 311.

It is disconcerting for common law judges who honor the tradition of *stare decisis* to contemplate the overruling of authority which has prevailed for nearly four decades. Adherence to precedent is to navigate in calm waters, but comfort and safety must not inhibit common law courts in their duty to demonstrate courage in the interest of justice. The recent history of this Court reveals a willingness to confront the concept of fundamental fairness in the face of precedent to the contrary. A notable and recent example of our willingness to change the law to accomplish a just result is found in *Hilen v. Hays,* Ky., 673 S.W.2d 713 (1984), in which we overruled the ancient doctrine of contributory negligence as a complete bar to recovery and adopted in its place the modern doctrine of comparative negligence. In reaching that decision, we recognized the role of precedent, but acknowledged our duty

---

7. Justice Hill, dissenting, in *Martin v. Kentucky Oak Mining Co.,* 429 S.W.2d 395, 401 (1968), explained the proposition as follows:

"I concede that prior to the decision in *Buchanan v. Watson,* Ky., 290 S.W.2d 40 (1956), there was a long line of cases by this court holding that the grantees under similar 'broad form' deeds had a right to use the surface for any purpose 'deemed necessary or convenient' by the grantee. *However, all those cases prior to Buchanan involved deep-mining methods, which was the method of mining contemplated by the parties in 1905.* But Buchanan really got out in left field when it ignored and disregarded all the rights of the surface owner." (Emphasis added.)

to depart from it when justice demanded the departure. We said:

"Every case must be decided with respect for precedent. But the doctrine of stare decisis does not commit us to the sanctification of ancient fallacy." *Id.* at 717.

"[The principle] is not inflexible, nor is it of such a nature as to require perpetuation of error or illogic." *D & W Auto Supply v. Department of Revenue,* Ky., 602 S.W.2d 420, 424 (1980).

▮ Though preserving the implicit right to strip mine regardless of the wishes of the surface owner, the plurality in *Akers v. Baldwin* rightly estimated the injustice of *Buchanan v. Watson* with respect to the denial of damages for surface destruction when it said:

"Surely it is not fair, surely it is not just, to allow such a situation to exist." *Akers* at 306.

As it was neither fair nor just to deny damages for surface destruction, it is neither fair nor just to permit surface mining contrary to the wishes of the surface owner and beyond the contemplation of the original parties to those instruments. As we now hold the firm conviction that the conveyance of minerals by means of a broad form deed did not include the right to strip mine, we hereby overrule that portion of *Buchanan v. Watson* and its progeny which survived our decision in *Akers v. Baldwin.* As this Court's decision in *Buchanan v. Watson* presumed a right to surface mine merely by virtue of the ownership of mineral rights, by this decision we hold that no such presumption shall hereafter exist.

Upon our determination that *Buchanan* was indeed aberrational, it is appropriate to restate certain rules by which mineral conveyances are to be construed. In *Franklin Fluorspar v. Hosick,* 239 Ky. 454, 39 S.W.2d 665 (1931), the controversy was over the proper construction of the phrase "all the coal minerals and mining privileges and right to remove the same." Appellants contended that proper construction required insertion of a comma between the words "coal" and "minerals" and appellees insisted otherwise. Resolving this, the Court said

"To construe this deed as conveying only coal minerals would be to construe it most favorably to the grantor and to give it a meaning which neither of the parties intended or had in mind. Words may in time shift in meaning, but in a deed they must be read in the sense in which they were commonly used where the deed was written, and in which the grantor and grantee then understood them." *Id.* at 667.

▮ The foregoing rule was applied in *Holladay v. Peabody Coal Co.,* 560 S.W.2d 550 (1977):

"[W]hen attempting to ascertain the intention of the parties to a mineral deed, the court must consider the situation and circumstances which existed when the deed was made." *Id.* at 554.

"To ascertain what the parties meant by what they wrote, we must try to place ourselves in their shoes. We then, psychologically, substitute ourselves for the contracting parties and take into effect the social and economic conditions of the times and of the parties, the usual practice of the trade, the familiarity of the parties with the subject matter, and the education and business advantages of the parties." *Id.* at 555.

Properly framed, the question here is not what the parties actually intended, but what they would have intended if significant surface destruction had been contemplated. In circumstances where there is no actual intent, a court should presume a reasonable intent. The Ohio Supreme Court adopted this approach in *Skivolocki v. East Ohio Gas Company,* 38 Ohio St.2d 244, 313 N.E.2d 374 (1974), as follows:

"Where the language of a contract is contradictory, obscure, or ambiguous, or where its meaning is doubtful, so that it is susceptible of two constructions, one of which makes it fair, customary, and such as prudent men would naturally execute while the other makes it inequitable, unusual, or such as reasonable men would not be likely to enter into, the interpretation which makes a rational and probable agreement must be preferred."

To achieve the proper construction of a broad form deed, the Court must examine not only the language of the instrument, but determine the intentions of the parties in the manner described hereinabove.

■ Despite our view that the right to strip mine was not a right properly flowing from the original conveyance, we must nevertheless consider appellees' claim that Section 19(2) of the Constitution of Kentucky violates Article I, Section 10 of the Constitution of the United States, the "Contract Clause." As we have said hereinabove, at the time of the original mineral conveyance, the parties could not have intended any substantial disturbance of the surface. The original contract did not create a right to surface mine; this right, such as it was, arose by court decision half a century after the conveyance. While appellees acquired their mineral ownership after our decision in *Buchanan* and with an expectation of the right to strip mine, they acquired no greater right than their vendors possessed. *York v. Perkins*, Ky., 269 S.W.2d 242 (1954); *Vanhoose v. Fairchild*, 145 Ky. 700, 141 S.W. 75 (1911). *Akers* went astray when it elevated the rights of those who acquired their interest subsequent to *Buchanan* to immunity from modification. Those who acquired such interests knew or should have known that *Buchanan* was not indisputable nor irrefutable and that in time its holding could be reconsidered and amended or overruled. To grant immunity from change is to concede that one may acquire a vested interest in the decision of a court, a proposition universally rejected. The applicable rule is well stated as follows:

"There is no vested right in the decisions of a court, and a change of decisions of a state court does not constitute the passing of a law, although the effect of such change is to impair the validity of a contract made in reliance on prior decisions." 16A Am. Jur.2d, Constitutional Law, § 703 (1979). *See Stockholders of Peoples Bank Co. v. Sterling*, 300 U.S. 175, 57 S.Ct. 386, 81 L.Ed. 586 (1937), and *Bacon v. Texas*, 163 U.S. 207, 16 S.Ct. 1023, 41 L.Ed. 132 (1896).

■ The Contract Clause protects only those rights which are embraced in the contract at the time it is entered into. *Knights Templars' & Masons Life Indemnity Co. v. Jarman*, 187 U.S. 197, 23 S.Ct. 108, 47 L.Ed. 139 (1902). *Texaco, Inc. v. Short*, 454 U.S. 516, 531, 102 S.Ct. 781, 792, 70 L.Ed.2d 738 (1982). An unforseen advantage is not entitled to constitutional protection. *El Paso v. Simmons*, 379 U.S. 497, 85 S.Ct. 577, 13 L.Ed.2d 446 (1965), reaffirmed in *Energy Resources v. Kansas Power & Light*, 459 U.S. 400, 103 S.Ct. 697, 74 L.Ed.2d 569 (1983). This Court's improvidently rendered decision in *Buchanan* amounted to an unforeseen windfall for mineral owners in complete derogation of the rights of surface owners. Surely, the Contract Clause does not prevent restoration of the original contract.

■ Appellees likewise claim that Section 19(2) of the Constitution of Kentucky constitutes a "taking" of private property for public use without just compensation in violation of the Fifth and Fourteenth Amendments to the Constitution of the United States. In substance, they contend that passage of the Constitutional Amendment deprives them of a property right by rendering it economically unfeasible to recover their minerals.

At the outset, we have difficulty bringing this case within the ambit of "takings" jurisprudence. The Constitutional Amendment here does not amount to a new regulation or land use restriction. It is simply the codification of a rule of contract construction designed to give effect to the original intention of the parties, a construction we believe to be entirely correct. While the Act of the General Assembly which proposed the Amendment recited limited public purposes as a justification, the overwhelming purpose was to correct what the General Assembly and the people believed to have been erroneous contract interpretations by this Court.

That an owner's right of use may be limited to the interests originally acquired was recognized in the Supreme Court's most recent pronouncement on the issue at hand, *Lucas v. South Carolina Coastal Council*, —— U.S. ——, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992). There, a newly enacted state regulation prohibited erection of any permanent habitable structure and was found to have rendered the land valueless. The Court

framed the issue as whether the Act's dramatic effect on the economic value of the land accomplished a taking which required just compensation. Discussing the effect of such a new regulation, a fact not present here, the Court nevertheless recognized that compensation was not required if

> "the owner's estate shows that the proscribed use interests were not part of his title to begin with. This accords, we think, with our 'takings' juris prudence, which has traditionally been guided by the understandings of our citizens regarding the content of, and the State's power over, the 'bundle of rights' that they acquire whey they obtain title to property." —— U.S. at ——, 112 S.Ct. at ——.

The Court recognized that regulatory action may diminish or eliminate economically productive uses of land providing it does not destroy all permissible uses under relevant property law principles.

When the principles in *Lucas* are applied here, it would appear that appellees have a common law right to remove their coal in accordance with the instrument of severance and in the manner contemplated therein, but are without any protected right to retain benefits claimed by virtue of our previous decisions. Manifestly, the determination of property rights acquired by virtue of written instruments is a matter of State law. *Texaco, Inc. v. Short, supra; Doochin v. Rackley,* 610 S.W.2d 715, 719 (Tenn.1981). As appellee's entitlement to remove their minerals in accordance with the instrument of acquisition has not been affected by Section 19(2) of the Constitution of Kentucky, there has been no violation of the Fifth and Fourteenth Amendments to the Constitution of the United States.

In final analysis, it is appropriate to review the matters decided herein and express our view as to the legal significance of Section 19(2) of the Constitution of Kentucky. For more than twenty years now, there has been growing disfavor among the Justices of this Court with the *Buchanan* construction of broad form deeds. In that time, the Legislature has twice sought to modify our interpretation, and in each instance, we have held its Act unconstitutional. This Court has evolved

from one in which we unanimously declared the right to strip mine to one in which each of seven Justices have acknowledged that the original parties did not anticipate any substantial disturbance of the surface estate. The culmination of the judicial and public debate was a Constitutional Amendment approved by more than 82% of the voters in the November, 1988, General Election. The effect of the Amendment, apart from the obvious effect of overruling numerous decisions of this Court, was to codify a rule of construction which we now hold to have been at all times the proper rule, our decisions to the contrary notwithstanding. In discerning no violation of the Constitution of the United States in Section 19(2) of the Constitution of Kentucky, we have also determined that it is in accord with the common law of this jurisdiction, and embrace it as reflective of the views of this Court.

For the foregoing reasons, the opinion of the Court of Appeals is reversed and the judgment of the trial court reinstated.

COMBS, SPAIN and WINTERSHEIMER, JJ., concur.

LEIBSON, J., dissents by separate opinion in which STEPHENS, C.J., and REYNOLDS, J., join.

LEIBSON, Justice, dissenting.

Respectfully, I dissent. Considering my oath to support our Kentucky Constitution (and, of course, its Amendments), to dissent in present circumstances is an onerous task. I do so only from a strong sense of conviction that there are compelling reasons; reasons that must be stated.

The Majority Opinion has lost sight of the judicial function. The first paragraph of the Majority Opinion trumpets that through the enactment of the Broad Form Deed Amendment "the people have declared that henceforth" Broad Form Deeds do not convey the right to strip mine without the surface owner's consent, and have "swept away" "numerous court decisions" to the contrary. The Majority Opinion fails to appreciate that, while majoritarian rule applies to state legislative enactments and state constitutional amendments, court cases are different.

They must be decided according to law, not by the will of the majority. The majority cannot dictate contract rights previously transferred by a deed because the U.S. Constitution, Art. 1, Sec. 10, guarantees the individual citizen's vested contract rights: "No state shall ... pass any ... Law impairing the Obligation of Contracts."

The Majority Opinion treats two *separate* issues as one.

The first issue is the rights conveyed by a Broad Form Deed, which by its terms conveyed the mineral estate and authorized the grantee to use the surface *in any manner* which may be deemed *necessary or convenient* for the *exercise and enjoyment* of the *property rights conveyed.* Do such deeds convey to the grantee the right to engage in surface mining without first obtaining permission from the persons presently holding title to the surface estate regardless of the mining methods extant at the time of the deed? We have so held in a long and unbroken line of cases, both old and recent.

The second and separate issue only arises if we continue to recognize that a Broad Form Deed conveys such right. If we recognize the rights conveyed by a Broad Form Deed include the right to engage in surface mining to remove the minerals without first obtaining further consent from the surface owner, does the recently enacted amendment to the Kentucky Constitution, now codified as Sec. 19(2) of the Constitution, by denying mineral owners such right, violate the Federal Constitution?

Why does the Majority Opinion go to great lengths to overrule our previous decisions on the appropriate *judicial construction* of a Broad Form Deed when such is not raised by the appellants? And why does the Majority Opinion bother to take up the Federal "Contract Clause" question if a Broad Form Deed does not include the right to surface mine in the first place? Obviously the Federal "Contract Clause" does not protect nonexistent contract rights, so why pontificate on a subject that seemingly has become a moot question? If the rights conveyed to mineral owners by Broad Form Deeds, properly construed, do not include the right to engage in surface mining without further permission

from the surface owner, quite obviously the new constitutional amendment is surplusage, and there is no need to explain why it is not in conflict with the Federal "Contract Clause." I suggest the reason the new judicial construction is necessary is because without it the "Contract Clause" violation is abundantly clear.

I turn first to the issue of judicial construction. Our opinion overrules *Buchanan v. Watson,* Ky., 290 S.W.2d 40 (1956), generally recognized as the principal authority for construing Broad Form Deeds as including the right to surface mine. But it also overrules our recent decision in *Akers v. Baldwin,* Ky., 736 S.W.2d 294 (1987), and by implication a long line of other cases to the same effect, including (*inter alia* ): *Rudd v. Hayden,* 265 Ky. 495, 97 S.W.2d 35 (1930), *Treadway v. Wilson,* 301 Ky. 702, 192 S.W.2d 949 (1946), *Bevander Coal Co. v. Matney,* Ky., 320 S.W.2d 301 (1959), *Blue Diamond Coal Co. v. Neace,* Ky., 337 S.W.2d 725 (1960), *Kodak Coal Co. v. Smith,* Ky., 338 S.W.2d 699 (1960), *Blue Diamond Coal Co. v. Campbell,* Ky., 371 S.W.2d 483 (1963), and *Martin v. Kentucky Oak Mining Co.,* Ky., 429 S.W.2d 395 (1968).

One reading the Majority Opinion might infer that *Akers v. Baldwin* overruled *Buchanan.* But *Akers v. Baldwin* only modified *Buchanan* by requiring the payment of damages to the surface owner in some instances; it followed *Buchanan* in construing the Broad Form Deed as conveying the right to engage in surface mining without the surface owner's consent, and more importantly, it held unconstitutional the 1984 statute declaring otherwise, KRS 381.940, the same statute then proposed and adopted in 1988 as a constitutional amendment.

The decision on these issues was not a plurality decision, as the present Majority Opinion so demeans it. It was a Majority Opinion: Justice Vance's Concurring Opinion did not differ from Chief Justice Stephens' Majority Opinion in any respect material to the issues in the present case. Of course, a majority of this Court has the raw power to overrule precedent, both recent and longstanding, construing the rights conveyed by

the forms used in ancient documents. But should we do so when the parties have not raised the issue and presented compelling reasons to believe our previous decisions erred in construing the documents? Should we do so because of popular clamor for a different result? No, not even when public opinion is expressed through a constitutional amendment. Of course the constitutional amendment overrides judicial precedent to the contrary, but that does not mean it was wrong. It is one thing to say the constitutional amendment is now the law, and an entirely different thing to say passing the constitutional amendment proves previous judicial decisions were erroneous. Contrary to the lead paragraph in the Majority Opinion, the "people" have not "swept away . ... numerous court decisions addressing the proper construction of the so-called 'broad form' deeds." It is our Court which now "sweep[s] away" an unbroken line of precedents, and public opinion can provide neither reason nor excuse. It may well be that by constitutional amendment the people of Kentucky exercise higher authority than this Court, but as a legal proposition the "proper construction of so-called 'broad form' deeds" stands on its own merit. While our oath constrains us to "support" the "constitution of this Commonwealth" it does not constrain us to abdicate the judicial function to popular will: to declare that the previous decisions of this Court were erroneous because a constitutional majority prefers a different result. The constitutional amendment does not prove the previous decisions of this Court were wrong any more than it proves they were right. If the Majority had discovered some new truth so compelling that our precedents should be overruled, let it so state. But judicial truth does not spring from the constitutional amendment any more than it sprung from the identical statute enacted in 1984 intended to override our previous decisions, which we struck down as unconstitutional in *Akers v. Baldwin, supra.*

The issues stated in the Appellants' Brief are: (1) "the mineral deed in this case is not a broad form deed"; (2) "the respondents did not produce sufficient evidence to prove their title"; and (3) as a fallback position, not that previous cases were wrong, but that the 1988 Kentucky constitutional amendment is higher authority. We have disagreed with the Appellants on points 1 and 2, as did the Court of Appeals. Thus, from the standpoint of the parties, the *sole* issue presently before us is whether the constitutional amendment, per se, controls this case. Of course it does, but only if still higher authority found in the Federal Constitution is not violated by the state constitutional amendment. Of course this Court must apply the state constitutional amendment regardless of whether previous decisions were right, but not if we are constrained to do otherwise by our oath to "support the Constitution of the United States."

Our judicial analysis of the present case should start with the fact that the Kentucky constitutional amendment changes the bundle of rights previously held by the parties to Broad Form Deeds and by their successors in title, and proceed from there to the question whether this change in the bundle of rights mandated by the Kentucky constitutional amendment offends the limitations on state power established by the federal constitution. We have not chosen this approach. The Majority seems to be aware, at least subconsciously, that unless we first reinterpret the rights held by the parties to the contract, quite obviously the state action is in derogation of the Federal Constitution guarantee.

The Majority Opinion quotes hornbook law stating "[t]here is no vested right in the decisions of a court.... although the effect of such change is to impair the validity of a contract made in reliance on prior decisions." 16A Am.Jur.2d, Constitutional Law, Sec. 703 (1979). The operating premise is that, theoretically, courts do not make law, they simply interpret and apply it. If this case is merely a matter of stating that previous decisions construing other similar contracts were in error, and not an exercise of state legislative authority, the contract clause is not implicated, not even if what we do overrules the portion of *Akers v. Baldwin, supra* at 307, "limit[ing] the application of this decision [i.e., payment of damages] by excluding from its effect all conveyances by broad form deed ... between the effective date of *Buchanan,*

May 4, 1956, and the initial rendition date of this decision, July 2, 1987."

But, while it is hornbook law that cases correcting judicial precedents do not implicate the Federal "Contract Clause," it is also hornbook law that "state constitutions and constitutional amendments" as well as state statutes fall squarely within its purview. 16A Am.Jur.2d, *supra*, Sec. 701 at p. 710. If the new state constitutional amendment conflicts with the Federal "Contract Clause" it is *as much a Federal constitution violation as the previous 1984 statutory enactment,* which we addressed in *Akers v. Baldwin, supra,* 736 S.W.2d at 310, where we stated:

"A statute that functions retroactively to determine the meaning of a preexisting deed or lease is constitutionally impermissible because this impairs the obligation of a contract.... The General Assembly can specify prospectively what rights are granted or denied by use of certain language in contracts in the future, but they cannot affect vested property rights."[1]

The discussion in *Akers v. Baldwin* on this point was brief, but it was to the point. The Majority Opinion here fails to point out why it was in error. The Majority Opinion here has confused the portion of the Opinion in *Akers* which gave only prospective effect to the change in construction with regard to the payment of damages, and the portion of the Opinion addressing the constitutional issue raised by the statute. Our decision to apply the change in construction regarding the payment of damages only prospectively was a *fairness issue, not a constitutional issue.* It was mandated in the portion of the opinion *before we reached* the portion devoted to "The Constitutional Challenge." *See* 736 S.W.2d at 307.

When we reached the portion of the opinion addressing whether the 1984 statute was a constitutional impairment of contract, *Akers* cited and followed *Dept. for Nat. R. & E. Pro. v. No. 8, Ltd.,* Ky., 528 S.W.2d 684 (1975), addressing an earlier legislative approach to the *same subject* matter. The statute in *No. 8, Ltd.* was not materially different from the statute addressed in *Akers*

v. *Baldwin* or the constitutional amendment with which we are in the present case. In *No. 8, Ltd.,* the statute in question required that a mineral owner's application for a strip mining permit be accompanied by a statement of consent signed by the surface owner. Thus, a mineral owner, even though he had the right to strip mine under his Broad Form Deed, would have been unable to obtain a permit without the consent of the surface owner. Then, as now, the principal thrust of the legislation was to give the surface owner veto power over strip mining. In *No. 8, Ltd.* we struck down the statute as unconstitutional stating "the primary purpose and effect [of the statute] is to change the relative legal rights and economic bargaining positions of many private parties under their contracts rather than achieve any public purpose. It is, therefore, axiomatic that [this statute] is unconstitutional." *Id.* at 687.

*Dept. for Natural Resources v. No. 8, Ltd.* represents the work of this Court at its best. Carefully crafted by Justice Robert Lukowsky, it cuts like a beacon through the fog of public purpose and regulatory power arguments to the essence of the "Contract Clause" issue:

"The limits are that the [state] police power may be used so as to invade private rights only if the legislation bears a real and substantial relation to the public health, safety, morality or some other phase of the general welfare. [Citations omitted.]

This dissection exposes the 'gut issue' here. May [this statute] be justified as a legitimate exercise of the police power?

In order to be justified it must stand as an environmental conservation measure....

But that is not this case. Here the legislation is ineffective as an environmental conservation measure. It does no more than delegate to an individual, a privy of a party to the contract which severed the mineral, a veto over the use of the land by the other party to the contract. It puts the surface owner in a position to be paid again for what he or his predecessor in

---

1. And the same rule of law applies to a state constitutional amendment.

title has already received compensation." *Id.* at 686.

It seriously depletes our limited supply of Kentucky jurisprudential resources to replace Justice Lukowsky's constitutional insights in *No. 8, Ltd.* with the vagaries of the present opinion.

I will not burden the reader by attempting here to expand on Justice Lukowsky's analysis of the correct application of Federal "Contract Clause" jurisprudence in the present circumstances. Further understanding of the problem and the U.S. Supreme Court's approach to it may be gleaned from contrasting two cases: *Home Building and Loan Ass'n. v. Blaisdell,* 290 U.S. 398, 54 S.Ct. 231, 78 L.Ed. 413 (1934) and *Allied Structural Steel Co. v. Spannaus,* 438 U.S. 234, 98 S.Ct. 2716, 57 L.Ed.2d 727, *reh. den.* 439 U.S. 886, 99 S.Ct. 233, 58 L.Ed.2d 201 (1978).

In the *Blaisdell* case the court upheld a Minnesota statute providing a procedure by which the period of redemption for mortgages could be extended, noting five circumstances that it found significant. None of these circumstances exists here to any significant degree as necessary to justify the present legislation.

In *Spannaus,* the court struck down a Minnesota statute which assessed a "pension funding charge" against certain employers, stating the law could "hardly be characterized, like the law at issue in the *Blaisdell* case, as one enacted to protect a broad societal interest rather than a narrow class." *Id.* at 249, 98 S.Ct. at 2724. If anything, *Spannaus* presented a more forceful circumstance for avoiding the "Contract Clause" than any that exist in the present case. In an extensive, scholarly article by Robert M. Pfeiffer, *Kentucky's New Broad Form Deed Law—Is It Constitutional?,* Journal of Mineral Law and Policy, Vol. 1 (1985), University of Kentucky College of Law, p. 85, the author summarized the Federal "Contract Clause" issue raised by the 1984 statute (KRS 381.940). This analysis applies here because the new Kentucky constitutional amendment is substantially identical:

"Given the history surrounding H.B. 32, it is reasonable to infer that the true purpose of the Act is simply to adjust the respective rights between mineral owners and surface owners in order to reach what the legislature considered to be a more equitable result. Accordingly, it may well be said that the Act is, in fact, addressed to 'the mere advantage of particular individuals,' rather than 'the protection of a basic interest to society.' " [This quotation from Pfeiffer was utilizing the U.S. Supreme Court's "Contract Clause" analysis in *Blaisdell* as a frame of reference.]

The various purposes for the constitutional amendment, as stated in the proposing legislation, S.B. 145, Ch. 117, 1988, are almost identical to the purposes stated in the bill enacting KRS 381.940 four years earlier. These purposes relate primarily (if not entirely) to protecting private interests, those of the surface owners. The Preamble states seven purposes: six of the seven cite narrow objectives related to the area of mineral titles and land transfers and obviously intend to correct perceived hardship and injustice to the surface owners caused by our previous judicial decisions, and only one of which bears even the pretext of regulation in the public interest. The one exception states that we must "promote the conservation and the full and efficient use of all natural resources of the state, including the land, the making of improvements to the land, the growth of agriculture, the development of new industry and the general economic well-being of the state and its people." There is no inkling as to how this law will effect this purpose in any way. The law does not regulate surface mining except to say mineral owners must purchase permission to surface mine from the surface owners before undertaking mining operations. Its effect as a conservation measure is speculative at best, either minimal or nonexistent depending on one's point of view. To withstand constitutional review the *primary* purpose and effect of the legislation must promote the general welfare as contrasted with a potentially remote or incidental effect.

Assuming for argument's sake this Preamble somehow suggests the kind of purpose that would satisfy the *Blaisdell* model, the amendment itself fails the test of serving this purpose. The new Kentucky constitutional

amendment, like the statutes preceding it, falls far short of a measure to promote the general welfare sufficient to justify impairing the individual rights protected against state action by the Federal "Contract Clause." As held in *United States Trust Co. v. New Jersey*, 431 U.S. 1, 97 S.Ct. 1505, 52 L.Ed.2d 92 (1977), merely stating "public purposes" is not enough; the purposes must be legitimate, and the legislation must be a reasonable and appropriate means of achieving that purpose. In the classical treatise on "Popular Government" written by the 19th century legal scholar, Sir Henry Maine, he characterized the contract clause in the U.S. Constitution as "the bulwark of American individualism against democratic impatience and socialistic fantasy." *Popular Government* 247–48 (1885). The "Contract Clause" is part of the package of individual rights which our constitutional forbears considered sufficiently important to protect against abrogation by state action, against the tyranny of the majority. Progressive societies, wrote Sir Henry Maine in his pathbreaking book, "Ancient Law" (1861), had evolved from status to contract.

The framers of the present Kentucky constitutional amendment, if not the members of this Court, recognized the obvious connection, and the conflict, between the proposed amendment and the contract clause in our Kentucky constitution: to avoid it they located the present amendment as subsection 2 of Sec. 19 of our Constitution, which is our own "Contract Clause," and which has stood since 1792 as protection against "any law impairing the obligation of contracts." Before enactment of this amendment, Sec. 19 stated:

"No ex post facto law, nor any law impairing the obligation of contracts, shall be enacted."

Sec. 19 now reads that no law impairing the obligation of contract shall be enacted with the exception stated in the Broad Form Deed Amendment. This step suffices to protect against our state "Contract Clause," but it only serves to highlight how the amendment violates the Federal "Contract Clause" which reads the same as our Kentucky Constitution once read.

There is a corollary to this problem that I address briefly before concluding this dissent. The Fifth Amendment to the U.S. Constitution, which is applicable to the states through the Fourteenth Amendment, provides "nor shall private property be taken for public use, without just compensation."

The United States Supreme Court has recognized a symbiotic relationship exists between the so-called Fifth Amendment "Taking Clause" and the "Contract Clause" previously discussed. Statutes enacted incidentally impairing contract rights sometimes escape the Contract Clause because the legislation is tested under the "regulatory" law analysis applied to the "Taking Clause" rather than "Contract Clause" analysis. The leading case on the subject is *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 43 S.Ct. 158, 67 L.Ed. 322 (1922), which involved a constitutional attack on a Pennsylvania statute that proscribed the mining of anthracite coal in any manner that might cause a subsidence of certain types of surface structures, including residences. This case was decided on the "Taking Clause" rather than the Contract Clause, but the statute was held unconstitutional because it failed to provide just compensation for the rights taken from the coal owners.

Highly pertinent to the present case, in reaching its decision the U.S. Supreme Court reasoned that "[f]or practical purposes, the right to coal consists of the right to mine it. [Citations omitted.] What makes the right to mine coal valuable is that it can be exercised with profit. To make it commercially impracticable to mine certain coal has very nearly the same effect for constitutional purposes as appropriating or destroying it." 260 U.S. at 414, 43 S.Ct. at 159.

In the present case, taking from the mineral owners the right to mine the surface where it is otherwise "commercially impracticable" to remove the coal, cannot be justified under federal "Taking Clause" jurisprudence even were we to assume that such taking could be justified to promote the general welfare. This is because the coal company has not been compensated for the "taking" of its property (its mining rights). *See Pennsylvania Coal Co. v. Mahon, supra.* The

only way to circumvent the obvious dilemma is to declare, as the Majority has done, that Broad Form Deeds give no surface mining rights to the mineral owners in the first place. To do so it is necessary to overrule precedent, both long-standing and recent, in a case where we have been presented no new or compelling reasons aside from public clamor against our previous decisions. Our Court bowed to the will of the majority at the sacrifice of individual rights protected in the United States Constitution which we are obligated to defend.

For the reasons stated I would hold the state constitutional amendment is in conflict with the Federal Constitution.

STEPHENS, C.J. and REYNOLDS, J., join in this dissent.

